**William DAYE, Petitioner-Appellant,**

v.

**ATTORNEY GENERAL OF the STATE OF NEW YORK and Eugene Le Fevre, Superintendent, Greenhaven Correctional Facility, Respondents-Appellees.**

**No. 906, Docket 80–2292.**

United States Court of Appeals, Second Circuit.

Argued to the *En Banc* Court April 13, 1982.

Decided Dec. 9, 1982.

Phylis Skloot Bamberger, The Legal Aid Society, Federal Defender Services Unit, New York City, for petitioner-appellant.

Meredith Anne Feinman, Asst. Dist. Atty., New York City (Robert M. Morgenthau, Dist. Atty., New York County, Robert M. Pitler, Mark Dwyer, Asst. Dist. Attys., New York City, on the brief), for respondents-appellees.

Before FEINBERG, Chief Judge, and KAUFMAN, OAKES, VAN GRAAFEILAND, MESKILL, NEWMAN, KEARSE, CARDAMONE, PIERCE, and WINTER, Circuit Judges.*

KEARSE, Circuit Judge:

The issue presented for our *en banc* consideration in this appeal concerns the standard for determining whether state remedies have been exhausted so as to permit federal habeas corpus review of a state court conviction. Appellant William Daye, a New York state prisoner, filed a petition for a writ of habeas corpus in the United States District Court for the Southern District of New York, Milton Pollack, *Judge,* contending principally that, in his state trial for murder and robbery, he had been denied a fair trial in violation of his federal constitutional rights. The district court ruled that Daye had exhausted his state remedies, but dismissed the petition for lack of merit. Daye appealed the dismissal of his fair trial claim,[1] and a divided panel of this Court, without reaching the merits, affirmed on the ground that Daye had failed to exhaust his state remedies. 663 F.2d 1155 (2d Cir. 1981). On *en banc* reconsideration, we conclude that Daye had exhausted his state remedies. We therefore vacate the decision of the panel and return the matter to the panel for consideration of the merits.

## I. BACKGROUND

Daye was convicted in New York Supreme Court in June 1976 of felony murder, intentional murder, and two counts of first degree robbery. The events leading to his conviction are set forth in detail in the opinions of the panel, 663 F.2d 1155, familiarity with which is assumed. In brief, the state presented evidence at trial that on March 19, 1974, Daye robbed patrons and employees of a restaurant, shot and mortally wounded the restaurant's cook, attempted unsuccessfully to shoot others in the restaurant, and fled. Daye was followed by one of his victims to a building two blocks away, and was soon apprehended there by police as he was trying to climb down a drainpipe. Daye's defense was that he had been a victim of the robbery rather than its perpetrator, and that he had fled the restaurant because he had a prior arrest record and was afraid he would be accused of the robbery.

Daye appealed his conviction to the Appellate Division of the Supreme Court, complaining principally that the trial judge had "assumed an obviously hostile and prosecutorial stance towards the defendant,"

* Senior Judge J. Edward Lumbard, who was a member of the panel that originally heard this appeal, elected not to participate in this *en banc* review, *see* Federal Court Improvement Act of 1982, Pub.L. No. 97-164, sec. 205, 96 Stat. 25, 53 (amending 28 U.S.C. § 46(c)).

Judge George C. Pratt became a member of the Court after this appeal was argued *en banc* and has not participated in the decision.

1. Daye did not appeal the dismissal of his other claim.

(Daye's brief to Appellate Division at 24), participated in the examination of the witnesses in a manner that tended to "aid and bolster the prosecution's case," (*id.* at 9), and conveyed to the jury the impression that he believed Daye was guilty, (*id.* at 14, 24, 34). Citing and quoting numerous portions of the trial transcript to support these assertions, Daye pointed out that "the Bench must be scrupulously free from and above even the appearance or taint of partiality, *People v. DeJesus*, 42 N.Y.2d 519, 523, 399 N.Y.S.2d 196, 199 [, 369 N.E.2d 752, 755] (1977)." (*Id.* at 8.) He argued that the trial court had instead "set impartiality aside in favor of the prosecution," (*id.*), thereby depriving him of his "cardinal" and "fundamental" "right to a fair trial," (*id.* at 34). In so arguing, Daye did not mention the Constitution or cite any federal cases. The Appellate Division affirmed Daye's conviction without opinion, *People v. Daye*, 72 A.D.2d 669, 421 N.Y.S.2d 955 (1979), and leave to appeal to the New York Court of Appeals was denied.

Daye then commenced the present proceeding by filing a petition for a writ of habeas corpus in the district court.[2] Again relying on his contentions that the trial judge, by his interrogation of witnesses and his manner of addressing defense counsel, had exhibited partisanship, Daye argued that he had been denied his right to a fair trial under the Fifth, Sixth, and Fourteenth Amendments to the Constitution. The state opposed the petition not only on its merits, but also on the ground that Daye had not presented his claim to the state courts in constitutional terms and thus had failed to exhaust his state remedies. Judge Pollack noted that the state court appeal had been prosecuted in terms of the denial of a "fair trial," and he concluded, citing *Twitty v. Smith*, 614 F.2d 325, 332 (2d Cir. 1979), that even without explicit citation of the Constitution or federal cases, Daye's presentation had been sufficient to alert the state courts that Daye claimed deprivation of his right to a fair and impartial trial under the Sixth and Fourteenth Amend-

ments. Reaching the merits, Judge Pollack dismissed Daye's petition because he concluded that the trial judge's conduct had not deprived Daye of a fair trial. This appeal followed.

## A. *Decision of the Panel*

On Daye's appeal the state pursued its contention that Daye had failed to exhaust his state court remedies, and a majority of the panel concluded that *Johnson v. Metz*, 609 F.2d 1052 (2d Cir.1979), compelled a ruling that there had been no exhaustion. Writing for the majority, Judge Newman stated as follows:

> This Court has frequently ruled that the exhaustion requirement is not satisfied unless the habeas petitioner explicitly refers to a federal constitutional standard in presenting his claim to the state courts. *Wilson v. Fogg*, 571 F.2d 91 (2d Cir.1978); *Cameron v. Fastoff*, 543 F.2d 971 (2d Cir.1976); *United States ex rel. Gibbs v. Zelker*, 496 F.2d 991 (2d Cir. 1974). We have especially emphasized the importance of identifying a claim as a federal constitutional claim when challenging the conduct of a state court trial judge. *Fielding v. LeFevre*, 548 F.2d 1102 (2d Cir.1977); *United States ex rel. Nelson v. Zelker*, 465 F.2d 1121 (2d Cir.), *cert. denied*, 409 U.S. 1045, 93 S.Ct. 544, 34 L.Ed.2d 497 (1972).

Just two years ago we applied this strict approach to exhaustion to a habeas corpus petition indistinguishable from Daye's. *Johnson v. Metz*, 609 F.2d 1052 (2d Cir.1979). Like Daye, Johnson sought habeas corpus relief because of the excessive and prejudicial intervention of the state court trial judge, and, like Daye, his state court briefs, which made no express mention of the Sixth or Fourteenth Amendments, referred to the denial of a fair and impartial trial and characterized a fair trial as a fundamental element of the judicial process. Though the District Court in *Johnson* had concluded that the

**2.** Daye filed his petition *pro se.* Following the decision of the district court, this Court ap- pointed The Legal Aid Society to represent Daye on appeal.

exhaustion requirement had been met and that the petitioner was entitled to relief on the merits, this Court reversed, ruling that Johnson had not presented a federal constitutional claim to the state courts. Even though Johnson's brief in the Appellate Division cited ten decisions of federal courts, his fair trial claim was deemed to be an appeal only to state law or to the supervisory power of the state appellate courts, and thus not the "same claim," *Picard v. Connor,* 404 U.S. 270, 276, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971), that he was presenting to the federal courts. *Johnson v. Metz, supra,* 609 F.2d at 1054.

663 F.2d at 1156–57; *see id.* at 1158 (Metzner, J., concurring). Thus, although the majority in the present case saw

> [little] reason to believe that the articulation of facts (here, excessive and prejudicial court questioning) and consequence (here, denial of a fair and impartial trial) are inadequate to afford state courts, fully aware of their constitutional responsibilities, a fair opportunity to decide whether a conviction accords with constitutional requirements,

*id.* at 1157 (Newman, J.); *see id.* at 1158 (Metzner, J., concurring), it felt constrained on the basis of *Johnson* to rule that there had been no exhaustion because Daye's state argument had not explicitly referred to federal constitutional standards. Accordingly, the panel affirmed the dismissal of Daye's petition, without prejudice to his commencing a new habeas proceeding after the exhaustion of state court remedies.

Judge Lumbard, in dissent, concluded that the exhaustion requirement had been satisfied because Daye's state appellate brief had "repeatedly argued that the trial judge's questioning 'deprived the defendant of his right to a fair trial,'" and "[t]he New York courts have recognized that this right rests on constitutional and not merely state law grounds ...." *Id.* at 1160. Judge Lumbard found *Johnson v. Metz* distinguishable because Daye, unlike the petitioners in *Johnson,* had relied on New York authorities, *e.g., People v. DeJesus, supra,* that themselves relied on United States Supreme Court cases in support of the principle that there is a fundamental, constitutional right to a fair trial untainted by judicial partiality.

In light of the importance of having a consistent and workable standard by which the courts of the Circuit may judge whether or not state court remedies have been exhausted, a majority of the active judges of the Court voted for *en banc* rehearing of the panel's decision, limited to the question of exhaustion. We directed the parties to file additional briefs on this issue and invited them to address the question whether *Johnson v. Metz* should be overruled.

## II.  DISCUSSION

### A.  *Exhaustion in General*

■ The federal habeas corpus statute, 28 U.S.C. §§ 2254(b) and (c), embodies the long-established principle that a state prisoner seeking federal habeas review of his conviction ordinarily must first exhaust available state remedies.[3]  *See Picard v.*

---

**3.** Sections 2254(b) and (c) provide as follows:

   (b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

   (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

   The group of "available" state remedies is circumscribed by various factors. What state remedial procedures are available depends in the first instance on the structure of the state judicial system. Exhaustion of available state remedies requires presentation of the claim to the highest state court from which a decision can be had. *See Developments in the Law—Federal Habeas Corpus,* 83 Harv.L.Rev. 1038, 1096 (1970). However, a petitioner need not give the state court system more than one full opportunity to rule on his claims; if he has presented his claims to the highest state court

*Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971); *Nelson v. George,* 399 U.S. 224, 229, 90 S.Ct. 1963, 1966, 26 L.Ed.2d 578 (1970); *Irvin v. Dowd,* 359 U.S. 394, 404–05, 79 S.Ct. 825, 831–32, 3 L.Ed.2d 900 (1959); *Ex parte Hawk,* 321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572 (1944); *Ex parte Royall,* 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868 (1886). In general, the exhaustion doctrine provides that a habeas petitioner seeking to upset his state conviction on federal grounds must first have given the state courts a fair opportunity to pass upon his federal claim. *Picard v. Connor, supra,* 404 U.S. at 275, 92 S.Ct. at 512; *Wilwording v. Swenson,* 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971) (per curiam).

The exhaustion requirement springs primarily from considerations of comity. The writ of habeas corpus is designed to provide an efficacious remedy for imprisonment in violation of federal law. *See, e.g., Braden v. 30th Judicial Circuit Court,* 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973). The exhaustion doctrine recognizes that state courts, no less than federal courts, are bound to safeguard the federal rights of state criminal defendants. *See Irvin v. Dowd, supra,* 359 U.S. at 404, 79 S.Ct. 825 at 831, 3 L.Ed.2d 900 (1959); *Ex parte Royall, supra,* 117 U.S. at 251, 6 S.Ct. at 740. The requirement that federal courts not exercise habeas review of a state conviction unless the state courts have had an opportunity to consider and correct any violation of federal law expresses respect for our dual judicial system and concern for harmonious relations between the two adjudicatory institutions. *See Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *Duckworth v. Serrano,* 454 U.S. 1, 102 S.Ct. 18, 70 L.Ed.2d 1 (1981) (per curiam); *Picard v.*

*Connor, supra,* 404 U.S. at 275, 92 S.Ct. at 512; *Darr v. Burford,* 339 U.S. 200, 204, 70 S.Ct. 587, 590, 94 L.Ed. 761 (1950); *Developments in the Law—Federal Habeas Corpus,* 83 Harv.L.Rev. 1038, 1093–94 (1970). In addition to "minimiz[ing] friction between our federal and state systems of justice," *Duckworth v. Serrano, supra,* 454 U.S. at 3, 102 S.Ct. at 19, adherence to the exhaustion requirement has the salutary practical effects of enhancing the familiarity of state courts with federal doctrines, *Rose v. Lundy, supra,* 102 S.Ct. at 1203; *Braden v. 30th Judicial Circuit Court, supra,* 410 U.S. at 490–91, 93 S.Ct. at 1127–28, and of increasing the likelihood that the factual allegations necessary to a resolution of the claim will have been fully developed in state court, making federal habeas review more expeditious, *Rose v. Lundy, supra,* 102 S.Ct. at 1203–04.

The exhaustion requirement is not satisfied unless the federal claim has been "fairly presented" to the state courts. *Wilwording v. Swenson, supra; see also Brown v. Allen,* 344 U.S. 443, 447–50, 73 S.Ct. 397, 402–404, 97 L.Ed.2d 469 (1953). In order to have fairly presented his federal claim to the state courts the petitioner must have informed the state court of both the factual and the legal premises of the claim he asserts in federal court. *See, e.g., Picard v. Connor, supra,* 404 U.S. at 276–77, 92 S.Ct. at 512–13; *Twitty v. Smith, supra,* 614 F.2d at 331. Specifically, he must have set forth in state court all of the essential factual allegations asserted in his federal petition; if material factual allegations were omitted, the state court has not had a fair opportunity to rule on the claim. *See, e.g., Picard v. Connor, supra,* 404 U.S. at 276, 92

---

on direct appeal he need not also seek state collateral relief. *See Wilwording v. Swenson,* 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971) (per curiam); *Brown v. Allen,* 344 U.S. 443, 448 n.3, 73 S.Ct. 397, 403 n.3, 97 L.Ed. 469 (1953). Further, the actions of the defendant in state court may serve to limit the state remedies that are available. Thus, failure to comply with a state rule may result in a procedural default that bars, under state law, the subsequent assertion of a challenge to the conviction. In this situation, the state procedure

for raising the challenge is no longer available. However, although the petitioner will thus have exhausted his available remedies, federal habeas review may be precluded by the doctrine of procedural forfeiture unless the petitioner can demonstrate that there was "cause" for his failure to comply with the state procedure, and that "prejudice" resulted. *See Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

S.Ct. at 512; *United States ex rel. Cleveland v. Casscles,* 479 F.2d 15, 19–20 (2d Cir.1973); *United States ex rel. Rogers v. La Vallee,* 463 F.2d 185 (2d Cir.1972); *United States ex rel. Boodie v. Herold,* 349 F.2d 372, 374 (2d Cir.1965).

Likewise, the petitioner must have placed before the state court essentially the same legal doctrine he asserts in his federal petition. *See, e.g., Picard v. Connor, supra; Callahan v. Le Fevre,* 605 F.2d 70, 72 (2d Cir.1979); *Wilson v. Fogg,* 571 F.2d 91, 92–93 (2d Cir.1978); *Fielding v. Le Fevre,* 548 F.2d 1102, 1107 (2d Cir.1977). The chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court.[4]

### B. *Presentation of Legal Basis*

The difficult question in many cases, including the present one, is whether the legal doctrines asserted in state and federal courts are substantially the same. Obviously if the petitioner has cited the state courts to the specific provision of the Constitution relied on in his habeas petition, he will have fairly presented his legal basis to the state courts. A defendant may, however, fairly present the substance of a federal constitutional claim to the state court without citing " 'book and verse on the federal constitution.' " *Picard v. Connor, supra,* 404 U.S. at 278, 92 S.Ct. at 513 (quoting *Daugharty v. Gladden,* 257 F.2d 750, 758 (9th Cir.1958)). The requirement that the state court have been given a reasonable opportunity to pass on the federal habeas claim is satisfied if the legal basis of the claim made in state court was the "substantial equivalent" of that of the habeas claim. *Picard v. Connor, supra,* 404 U.S. at 278, 92 S.Ct. at 513; *see also Ulster County Court v. Allen,* 442 U.S. 140, 147–48 n.5, 99 S.Ct. 2213, 2217–20 n.5, 60 L.Ed.2d 777 (1979); *Callahan v. Le Fevre, supra,* 605 F.2d at 73–74; *Fielding v. Le Fevre, supra,* 548 F.2d at 1107; *United States ex rel. Gibbs v. Zelker,* 496 F.2d 991, 993–94 (2d Cir.1974). This means, in essence, that in state court the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature.

The courts may be alerted to the constitutional nature of a claim in a number of ways. Even absent a reference to "book and verse" of the Constitution the state court will have notice of the constitutional nature of a claim if, for example, the defendant relies on federal constitutional precedents.[5] *See, e.g., United States ex rel.*

---

4. By the same legal "basis" or "doctrine," we do not mean that there can be no substantial difference in the legal theory advanced to explain an alleged deviation from constitutional precepts. For example, constitutional doctrine forbids use of a confession against a defendant unless the confession was voluntary. A number of legal theories may be advanced as to why a confession was not voluntary. Yet all that is needed to alert the state courts to the constitutional nature of the claim is the exposition of the material facts and the assertion that the confession was not voluntary. In *United States ex rel. Kemp v. Pate,* 359 F.2d 749 (7th Cir.1966), for example, the petitioner challenged the voluntariness of his confession in both court systems. In state court he argued that he had confessed as a result of physical coercion; in federal court he added the argument that coercion was shown by the "totality of the circumstances," including psychological coercion. The Seventh Circuit held that state remedies had been exhausted, because, although the defendant had not made the "totality of the circumstances" argument in state

court, the ultimate constitutional question—the voluntariness of the confession—had been presented. *Kemp* was cited with approval by the Supreme Court in *Picard v. Connor, supra,* as follows:

Obviously there are instances in which "the ultimate question for disposition," *United States ex rel. Kemp v. Pate,* 359 F.2d 749, 751 (CA7 1966), will be the same despite variations in the legal theory or factual allegations urged in its support. A ready example is a challenge to a confession predicated upon psychological as well as physical coercion. See *Sanders v. United States,* 373 U.S. 1, 16, [83 S.Ct. 1068, 1077, 10 L.Ed.2d 148] (1963).

404 U.S. at 277, 92 S.Ct. at 513.

5. Even if not alerted by the defendant, the state court might be alerted by the briefs filed by the state in opposition. *See Twitty v. Smith, supra,* 614 F.2d at 332 (state's citation in state court of the leading federal constitutional cases supported a conclusion that the federal nature of the claim had adequately been called to the state court's attention); *see also Smith v. Dig-*

*Gibbs v. Zelker, supra,* 496 F.2d at 994 (intimating that a citation to *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), would have alerted state court to the constitutional thrust of defendant's claim). Alternatively, the state court will be alerted to the constitutional nature of a claim if the defendant has claimed the deprivation of a particular right specifically protected by the Constitution. In *Twitty v. Smith, supra,* for example, the petitioner had claimed a violation of his right to "effective assistance of counsel." 614 F.2d at 332. We held this adequate to alert the state court to consider the Sixth Amendment's guaranty of the accused's right "to have the Assistance of Counsel for his defence."

The more specific the description of the right in question—*e.g.,* assistance of counsel, double jeopardy, self-incrimination—the more easily alerted a court will be to consider a constitutional constraint couched in similarly specific terms.[6] The greatest difficulty arises when in the state court the petitioner has described his claim in very broad terms, such as denial of a "fair trial." The concept of fairness embraces many concrete notions, ranging from such fundamental matters as the right of the defendant to know the charges against him, to such lesser interests as his right to have each count of the indictment charge him with no more than one criminal violation, *United States v. Gibson,* 310 F.2d 79, 80 n.1 (2d Cir.1962); Fed.R.Crim.P. 8(a); or the right to have access to reports by informant witnesses to law enforcement officials, *United States v. Sanchez,* 635 F.2d 47, 65–66 (2d Cir.1980); or the right to present information in mitigation of punishment before being sentenced after conviction, Fed.R.Crim.P. 32(a). Obviously not every event in a crimi-

nal proceeding that might be described as "unfair" would be a violation of the defendant's rights under the Constitution. *See, e.g., Kirksey v. Jones,* 673 F.2d 58, 60 (2d Cir.1982) ("Alleging lack of a fair trial does not convert every complaint about evidence or a prosecutor's summation into a federal due process claim."). In order to determine, therefore, whether a claim that the defendant has been denied a "fair trial" involves a constitutional claim, one must look to the factual allegations supporting the claim. Some will be of patently constitutional dimension. If the defendant claimed that he was accused of one crime but convicted of an entirely different crime and hence was denied a fair trial, no reasonable jurist would doubt that the defendant's claim implicated his constitutional right to due process of law. In contrast, a defendant's claim that he was deprived of a fair trial because of the admission in evidence of a statement objectionable as hearsay would not put the court on notice that the defendant claimed a violation of his constitutional right to be confronted by his accusers.

■ The general principle governing assessment of whether a fair trial claim is of constitutional dimension is that where the claim rests on a factual matrix that is "well within the mainstream of due process adjudication," *Johnson v. Metz, supra,* 609 F.2d at 1057 (Newman, J., concurring); *see also id.* at 1056 n.5 (opinion of the Court), the state courts must be considered to have been fairly alerted to its constitutional nature. If, on the other hand, the claim is based on a fact pattern not theretofore commonly thought to involve constitutional constraints, there is usually little reason to believe the courts were alerted to its supposed constitutional nature.

*mon,* 434 U.S. 332, 98 S.Ct. 597, 54 L.Ed.2d 582 (1978) (per curiam) (conclusion that state prisoner had exhausted his remedies was supported by fact that the state's brief in state court had vigorously opposed the prisoner's constitutional claim).

6. On the other hand, a defendant's reference in constitutional terms to the deprivation of one particular right does not serve to alert a court

to a contention that another constitutional violation also occurred. *See, e.g., Picard v. Connor, supra* (Fifth Amendment challenge to invalid indictment did not give notice of claimed deprivation of equal protection); *Wilson v. Fogg, supra* (due process challenge to identification procedures did not alert state court to the constitutional thrust of defendant's claim challenging his trial in absentia).

■ In addition, however, even if a particular matter is not treated generally as having constitutional dimension, if the courts of the state in question have themselves previously treated that fact pattern as appropriate for constitutional analysis, it would be unreasonable to suppose that they are not alert to constitutional considerations. Thus we consider that a defendant who cites state precedent that employs pertinent constitutional analysis has adequately put the state courts on notice of the constitutional thrust of his claim.[7]

■ In summary, the ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim, even without citing chapter and verse of the Constitution, include (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in

like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation. In all such circumstances the federal habeas court should assume that the state courts, which are obliged, " 'equally with the courts of the Union, . . . to guard, enforce, and protect every right granted or secured by the Constitution of the United States,' " *Irvin v. Dowd, supra,* 359 U.S. at 404, 79 S.Ct. at 831 (quoting *Robb v. Connolly,* 111 U.S. 624, 637, 4 S.Ct. 544, 551, 28 L.Ed. 542 (1884)), have been alerted to consider, and have considered, the constitutional claim. To eschew that assumption is surely to disserve the interests of comity and the respect due the diligent jurists on the state bench.[8]

---

7. The decision of the Supreme Court in *Anderson v. Harless,* —— U.S. ——, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982) (per curiam), does not require a different construct. In *Harless,* the habeas petitioner contended in federal court, relying on *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), that a trial court instruction on malice had deprived him of the presumption of innocence; in state court the petitioner had argued that the malice instruction was "reversible error," relying not on the Constitution or federal cases but on *People v. Martin,* 392 Mich. 553, 221 N.W.2d 336 (1974). *People v. Martin* had been decided on state law grounds, notwithstanding that "the defendant had argued broadly that failure to properly instruct a jury violates the Sixth and Fourteenth Amendments." *Anderson v. Harless, supra,* —— U.S. at ——, 103 S.Ct. at 277. The Supreme Court in *Harless* summarily reversed a judgment affirming the granting of habeas corpus, on the ground that the citation to *Martin* was insufficient to "fairly present" the substance of the petitioner's federal claim to the state court. The basis for the Court's conclusion was twofold. First, although the defendant in *Martin* had argued in federal constitutional terms, the state court had decided no federal issues and had rested its decision solely on state law. Second, the constitutional claim advanced by Martin was not that he had been deprived of the presumption of innocence, but rather that he had a "due process right to jury instructions that 'properly explain[ed]' state law." *Id.* at 278 (quoting *People v. Martin,* 392 Mich. at 558, 221 N.W.2d at 339). Thus, the *Harless* Court stated as follows:

> We doubt that a defendant's citation to a state-court decision predicated solely on

state law ordinarily will be sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim. However, it is clear that such a citation is insufficient when, as here, the federal claim asserted in the cited case is not even the same as the federal claim on which federal habeas relief is sought.

*Id.* n. 3 (citation omitted).

8. The standards we set here are similar to those adopted in the Fifth and Seventh Circuits, which have ruled that a petitioner's state court argument need not have cited the Constitution or federal cases, *Blankenship v. Estelle,* 545 F.2d 510, 514–15 (5th Cir.1977), *cert. denied,* 444 U.S. 856, 100 S.Ct. 115, 62 L.Ed.2d 75 (1979), and need not have identified the precise nature of the claim with a "hornbook heading," *Macon v. Lash,* 458 F.2d 942, 949 (7th Cir. 1972). Rather, when the claim is one that the courts have "long been on notice" implicates federal constitutional rights, *Blankenship v. Estelle, supra,* 545 F.2d at 514–15 (prosecution's knowing use of perjured testimony), the federal claim has been held adequately presented to the state courts. *Cf. Wilks v. Israel,* 627 F.2d 32 (7th Cir.1980) (finding nonexhaustion of claim presented to state court only in state terms where constitutional thrust of challenge, as eventually articulated in federal court, was "somewhat novel"), *cert. denied,* 449 U.S. 1086, 101 S.Ct. 874, 66 L.Ed.2d 811 (1981). *See also Bisaccia v. Attorney General,* 623 F.2d 307, 311 (3d Cir.) (finding exhaustion as to claim rejected by state court using "a method of analysis consistent with Fourteenth Amendment due

We do not view *Johnson v. Metz, supra,* as inconsistent with this framework for assessment of exhaustion. Although subsequent panels have construed language in *Johnson* as imposing a requirement that the constitutional claim have been plainly labeled as such to the state court, *see, e.g., Klein v. Harris,* 667 F.2d 274 (2d Cir.1981); *Gayle v. Le Fevre,* 613 F.2d 21, 22–23 (2d Cir.1980), the analytical process followed by *Johnson* does not support this view. The *Johnson* panel did not rely merely on the fact that the petitioners had not expressly described their claim as one arising under the Constitution. Rather, it examined the cases cited by the petitioners to determine whether those cases in turn referred to constitutional doctrines. Finding that the cases cited were either state cases resting on state law or on state supervisory power or federal cases resting on federal court supervisory power, the panel concluded that the federal constitutional claim asserted in the habeas petition had not been fairly presented to the state courts. Thus, we regard *Johnson* as having recognized that explicit labeling is not a *sine qua non* of exhaustion, and that the invocation of state cases employing constitutional analysis would have sufficed to alert the state courts to the constitutional nature of the claim.

Nor do we read the *Johnson* majority as having rejected the general proposition discussed in Judge Newman's concurring opinion, 609 F.2d at 1057, and which we accept here, that a state court is alerted to the constitutional nature of a claim if its fact pattern brings it within the mainstream of due process litigation. Rather, the majority seemed uncertain that the *Johnson* petitioners' claim actually fell within that category. *See id.* at 1056 n.5. It is with *Johnson's* assessment of the applicability of the "mainstream" criterion that we have difficulty. *See* part C *infra.*

process determinations," with dissenting state judge "casting his dissent in constitutional language"), *cert. denied,* 449 U.S. 1042, 101 S.Ct. 622, 66 L.Ed.2d 504 (1980).

In contrast, the Eighth Circuit appears to have adopted the more restrictive standard that the petitioner must have cited either the Constitution or federal constitutional cases in order

### C. *Daye's Presentation*

■ In the present case, we conclude that Daye exhausted his state remedies under two of the criteria articulated above. First, his Appellate Division brief relied on two state cases in which New York's highest court had analyzed similar contentions in constitutional terms. Second, Daye's repeated challenge to the trial judge's alleged partiality or open display of partiality served to place his claim within the ambit of a long line of cases establishing a defendant's constitutional right to a trial before an unbiased judge.

### 1. *Constitutional Treatment by the State Courts*

The pertinent state cases relied on by Daye in his state appeal were *People v. De Jesus, supra,* 42 N.Y.2d 519, 399 N.Y.S.2d 196, 369 N.E.2d 752, and *People v. Crimmins,* 36 N.Y.2d 230, 367 N.Y.S.2d 213, 326 N.E.2d 787 (1975). Daye cited *De Jesus* for the proposition that "the Bench must be scrupulously free from and above even the appearance or taint of partiality." (Daye's brief to Appellate Division at 8.) In *De Jesus,* the New York Court of Appeals described the issue before it—whether the excessive intervention of the trial judge deprived the defendant of a fair trial—in clearly constitutional terms, quoting and citing federal constitutional cases:

"It is 'the law of the land' that no man's life, liberty or property be forfeited as a punishment until there has been a charge fairly made and fairly tried in a public tribunal" (*Matter of Oliver,* 333 U.S. 257, 278 [, 68 S.Ct. 499, 510, 92 L.Ed. 682]). Such a right constitutes the most fundamental of all freedoms (*Estes v. Texas,* 381 U.S. 532, 540 [85 S.Ct. 1628, 1631, 14

to fairly present his claim to the state court. *See Thomas v. Wyrick,* 622 F.2d 411 (8th Cir. 1980) (assertion that trial court's refusal to allow defendant to call any character witnesses was a denial of a fair trial held inadequate to present claim as one of federal constitutional dimension).

L.Ed.2d 543] ). The underlying issue here is whether defendant . . . was deprived of such a trial.

42 N.Y.2d at 520, 399 N.Y.S.2d 196, 369 N.E.2d 752. In concluding that the intervention of the trial judge had denied the defendant " 'a fair and impartial trial before an unbiased court and an unprejudiced jury,' " id. at 523, 399 N.Y.S.2d 196, 369 N.E.2d 752 (quoting People v. McLaughlin, 150 N.Y. 365, 375, 44 N.E. 1017 (1896)), the court adverted not only to state cases but as well to Sheppard v. Maxwell, 384 U.S. 333, 350–51, 86 S.Ct. 1507, 1515–16, 16 L.Ed.2d 600 (1966), and Turner v. Louisiana, 379 U.S. 466, 472, 85 S.Ct. 546, 549, 13 L.Ed.2d 424 (1965), cases affirming the right, guaranteed by the Due Process Clause of the federal Constitution, to a fair trial.

Daye quoted People v. Crimmins for the proposition that his right to a fair trial was so fundamental that its denial precluded invocation of any sort of "harmless error" analysis. In Crimmins, the New York Court of Appeals introduced the portion of its harmless error discussion that was quoted by Daye with the following observation:

[O]ur discussion of the effect to be given constitutional error should not overlook a parallel, and in some instances an overlapping doctrine, also of constitutional proportion, namely, the right to a fair trial.

36 N.Y.2d at 237–38, 367 N.Y.S.2d 213, 326 N.E.2d 787.

The discussions in Crimmins and De Jesus, therefore, show that the New York courts view a defendant's right to a fair trial as one of constitutional dimension, and view a claim of excessive and biased judicial intervention in the trial as implicating that right to a fair trial. We conclude that Daye's citations of those two cases in the context of his factual assertions were sufficient to give the state courts notice that he asserted a constitutional claim.

We note in passing that Crimmins and De Jesus (as well as People v. Mees, 47 N.Y.2d 997, 420 N.Y.S.2d 214, 394 N.E.2d 283 (1979), which further confirms the constitutional thrust of Crimmins and De Jesus)

were decided after the defendants' state appeal in Johnson v. Metz. Obviously these New York cases were not cited in the Johnson state appeals. Further, although both Crimmins and De Jesus had been decided before Johnson was argued to our Court and Mees was decided several months before the Johnson decision was rendered, they apparently were not called to our attention. The Johnson panel stated

We have been cited to no case, nor have we found any, in which the intervention of a trial judge in the conduct of trial has been found so prejudicial as to amount to a violation of constitutional due process.

609 F.2d at 1056.

2. *The Mainstream of Due Process Adjudication*

In addition, we conclude that Daye satisfied the exhaustion requirement because the contention that the trial judge's evident partiality and his assumption of a hostile and prosecutorial stance deprived Daye of a fair trial was sufficient to alert the state court that a federal due process claim was being asserted. Under the Due Process Clause there is a well developed right, established in a long line of cases, to a trial before an unbiased judge. The fundamental nature of this right is demonstrated by the fact that not even the appearance of bias is tolerated. "Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness. . . . '[J]ustice must satisfy the appearance of justice.' " In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955) (quoting Offutt v. United States, 348 U.S. 11, 14, 75 S.Ct. 11, 13, 99 L.Ed. 11 (1954)). This principle is reflected in a long line of cases, involving a variety of circumstances bespeaking the real or apparent bias of the trial judge. E.g., Taylor v. Hayes, 418 U.S. 488, 501, 94 S.Ct. 2697, 2704, 41 L.Ed.2d 897 (1974); Ward v. Village of Monroeville, 409 U.S. 57, 59–60, 93 S.Ct. 80, 82–83, 34 L.Ed.2d 267 (1972); Mayberry v. Pennsylvania, 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971); In re Oliver, 333 U.S. 257, 278, 68 S.Ct. 499, 510, 92 L.Ed. 682

(1948); *Tumey v. Ohio,* 273 U.S. 510, 523, 534, 47 S.Ct. 437, 441, 445, 71 L.Ed. 749 (1927). In *Murchison* and *Oliver,* the risk of bias inhered in the fact that the trial judge was the person who had brought the charges. In *Taylor* and *Mayberry,* the potential bias came from the fact that the judge presided over a trial adjudicating allegedly contemptuous behavior toward himself. And in *Ward* and *Tumey,* the appearance of potential bias was reflected in the fact that any fine or costs payable by the defendant upon conviction were to be paid to the judge.

We regard it as immaterial that none of these cases dealt with a bias manifested through allegedly excessive and one-sided intervention in the trial. The gravamen of a claim of denial of a fair trial due to judicial bias does not depend on the source of the bias or the manner of its manifestation. If judicial bias, or the appearance of it, existed, due process was denied. We do not believe it reasonable to assume that state judges presented with a claim of manifested judicial bias would fail to recognize the implication of due process rights simply because half a century of due process cases dealt with the mere risk of bias or with actual bias manifested in other ways.

Thus, to the extent that *Johnson v. Metz* actually construed Johnson's claim as one of bias (*i.e.,* denial of an "impartial" trial, *see* 609 F.2d at 1054), rather than one simply complaining of "the overall conduct of the trial judge," *id.,* or simply complaining of "intervention," *id.* at 1056, we disagree with its conclusion that the claim as one with constitutional thrust was "novel," and with its decision to "giv[e] the state court the first opportunity to pass on whether or not the novel constitutional point is 'within the mainstream of due process adjudication,'" *id.* n. 5.

In the present case there can be little doubt that Daye asserted his fair trial claim in terms of the alleged bias displayed by the trial judge. Having started from the basic doctrine that the judge must "be scrupulously free from and above even the appearance or taint of partiality," (Daye's brief to Appellate Division at 8), Daye proceeded to assert, *inter alia,* that "[t]hroughout the trial the Court set impartiality aside in favor of the prosecution," (*id.*); that the court "assume[d] the role of prosecutor" and thereby "demonstrated to the jury that the Trial Judge believed the defendant to be guilty," (*id.* at 14); that the trial judge demonstrated an "inability to remain 'impartial and dispassionate and not appear as an advocate,'" (*id.* at 20); and that the court "blatantly and repeatedly indicated its disbelief in the defendant's testimony ... and assumed an obviously hostile and prosecutorial stance towards the defendant," (*id.* at 24). We conclude that the state courts were alerted to Daye's complaint that he had been deprived of a trial before an unbiased judge and unprejudiced jury, and we cannot assume that those courts did not recognize the constitutional implications of such a claim.

## CONCLUSION

The decision of the panel is vacated, and the appeal is remanded to the panel for consideration of the merits.

VAN GRAAFEILAND, Circuit Judge, dissenting:

> "The writ has no enemies so deadly as those who sanction the abuse of it, whatever their intent."

> Jackson J., concurring in *Brown v. Allen,* 344 U.S. 443, 544, 73 S.Ct. 397, 429, 97 L.Ed. 469 (1953).

Federal habeas corpus jurisdiction has been described as an "untidy area" of the law, *Sunal v. Large,* 332 U.S. 174, 184, 67 S.Ct. 1588, 1593, 91 L.Ed. 1982 (1947) (Frankfurter, J. dissenting), presenting "many procedural problems which are not easy of solution", *Price v. Johnston,* 334 U.S. 266, 269, 68 S.Ct. 1049, 1052, 92 L.Ed. 1356 (1948). Commentators have described it as one of the "dark corners of the law", Reitz, *Federal Habeas Corpus: Postconviction Remedy For State Prisoners,* 108 U.Pa. L.Rev. 461 (1960), only dimly lit by the "confused and unprincipled" determinations of the courts, Note, *Guilt, Innocence and*

*Federalism in Habeas Corpus,* 65 Cornell L.Rev. 1123, 1147 (1980).

The cause of much of the procedural confusion has been the requirement that State remedies be exhausted before a federal writ is granted. This requirement, now codified in 28 U.S.C. § 2254(b), has existed almost from the time that Congress first authorized the use of habeas corpus for the aid of persons unconstitutionally restrained of their liberty. *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). It has been said that section 2254(b) provides a "straightforward exhaustion requirement", a "simple and clear instruction to potential litigants" that before they bring any claims to federal court they should be sure they have first taken each one to State court. *Rose v. Lundy,* 455 U.S. 509, 520, 102 S.Ct. 1198, 1204, 71 L.Ed.2d 379 (1982). In actual practice, however, the "simple and clear instruction" often has been ignored, and the application of the exhaustion requirement has been something less than "straightforward".

Although I am somewhat overwhelmed by my learned colleagues' unanimity of view, I am convinced that this Court's *en banc* decision will exacerbate the jurisdictional confusion that already exists in this area and will at the same time substantially undercut the doctrine of exhaustion of remedies. I therefore respectfully dissent.

Little purpose would be served by reciting the history of the century-old controversy surrounding the power of a single federal district judge to overrule a decision that has been concurred in by as many as thirteen State court judges. *But see* Wright, *Handbook of the Law of Federal Courts* 236–248 (3d ed.1976); Shapiro, *Federal Habeas Corpus: A Study in Massachusetts,* 87 Harv.L.Rev. 321 (1973). Friction in this area has been both persistent and inevitable, *Sumner v. Mata,* 449 U.S. 539, 550, 101 S.Ct. 764, 770–71, 66 L.Ed.2d 722 (1981), and the task of a district judge is therefore a most "delicate" one. *Darr v. Burford,* 339 U.S. 200, 206–07, 70 S.Ct. 587, 591–92, 94 L.Ed. 761 (1950). Because of the "principles of federalism which underlie the Amer-

ican legal system", *see Mackey v. United States,* 401 U.S. 667, 685, 91 S.Ct. 1160, 1176, 28 L.Ed.2d 404 (1971) (Harlan, J. concurring in part and dissenting in part), a district judge should exercise habeas corpus jurisdiction with due concern for the "mutual respect and the balanced sharing of responsibility between the state and federal courts which our tradition and the Constitution itself so wisely contemplate", *Schneckloth v. Bustamonte,* 412 U.S. 218, 265, 93 S.Ct. 2041, 2067, 36 L.Ed.2d 854 (1973) (Powell, J. concurring). I am afraid that the majority's instructions to our district judges will encourage deviation from that salutary practice.

The fundamental liberty secured by the Fourteenth Amendment is the right to a fair trial. *Estelle v. Williams,* 425 U.S. 501, 503, 96 S.Ct. 1691, 1692, 48 L.Ed.2d 126 (1976). However, since no prisoner attacking his conviction will ever concede that he was fairly convicted, my colleagues state quite correctly that a claim of unfairness, standing alone, does not raise a constitutional issue. My colleagues say that our district judges must look to the factual allegations supporting the prisoner's claim of unfairness to determine whether they are within the "mainstream of due process adjudication." If they are, our district judges are instructed to assume that the State courts reviewed the claim as one being made under the United States Constitution, despite the absence of any reference to that document in the prisoner's brief. "To eschew that assumption", the majority say, "is surely to disserve the interests of comity and respect due the diligent jurist on the state bench."

My first quarrel with the majority opinion is its facile use of the phrase "mainstream of due process adjudication". If there is such a "mainstream", it has meandered so often as to be almost indefinable. "The Bill of Rights ... has become a detailed code of Criminal Procedure to which a new chapter is added every year," Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments,* 38 U.Chi.L. Rev. 142, 156 (1970); and, as a result, there

has been an "extraordinary expansion of the concept of habeas corpus", *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 501, 93 S.Ct. 1123, 1132, 38 L.Ed.2d 443 (1973) (Blackmun, J. concurring).[1] One need only examine the volume of scholarly commentary that followed the Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) to realize what an abrupt departure from established law that decision made. In Justice Stevens' words, *Jackson* enunciated a "new rule of law", a "novel constitutional rule", a "new constitutional precept", a "new constitutional principle", a "new constitutional edict". *Id.* at 326–28, 99 S.Ct. at 2792–94. It was not surprising, therefore, that Justice Powell observed in *Rose v. Mitchell*, 443 U.S. 545, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979), that the Supreme Court "has come to accept review by federal district courts of state-court judgments in criminal cases as the rule, rather than the exception that it should be." *Id.* at 581, 99 S.Ct. at 3013 (Powell, J. concurring). Without belaboring the point, I simply pose the question whether my colleagues would have considered a 1978 petition based upon the insufficiency of evidence to be within their so-called "mainstream of due process adjudication."

My second difference with my colleagues arises from their incomplete, and therefore somewhat misleading, description of the assumption which they instruct our district judges henceforth to make. A district judge who is forced to assume that State court judges have considered a constitutional claim, must also assume that the State court judges have silently rejected it. Should the district judge grant a writ under such circumstances, he will be telling the State court judges in substance that he assumes they were smart enough to spot a constitutional question but not smart enough to answer it correctly. This, I suggest, is not comity.

We delude ourselves if we believe that New York State appellate judges are less competent than federal judges to protect the constitutional rights of criminal defendants. *See Stone v. Powell*, 428 U.S. 465, 493–94 n. 35, 96 S.Ct. 3037, 3052 n. 35, 49 L.Ed.2d 1067 (1976); Bator, *Finality in Criminal Law and Federal Habeas Corpus for State Prisoners*, 76 Harv.L.Rev. 441, 509 (1963); Friendly, *supra*, at 135 n. 125; Desmond, *Federal Habeas Corpus Review of State Court Convictions—Proposals for Reform*, 9 Utah L.Rev. 18 (1964). Moreover, we demean the State appellate process and impose unnecessary burdens on our district judges if we, do not strongly support the policy of federal-state comity, which underlies the doctrine of exhaustion of remedies. *Webb v. Webb*, 451 U.S. 493, 500–01, 101 S.Ct. 1889, 1893–94, 68 L.Ed.2d 392 (1981); *Jackson v. Virginia, supra*, 443 U.S. at 337, 99 S.Ct. at 2798 (Stevens, J. concurring).

The principles of comity will not be served by a policy of this Court which encourages and condones careless practice and briefing in the State courts by defense attorneys and which charges State appellate courts with having silently rejected constitutional claims that were not squarely raised by State court appellants and were neither briefed nor argued by their opponents. The better rule, and the one we are required to follow, was laid down by the Supreme Court in *Webb v. Webb, supra*, 451 U.S. at 501, 101 S.Ct. at 1894, where Justice White, writing for eight members of the Court, said:

> At the minimum, however, there should be no doubt from the record that a claim under a *federal* statute or the *Federal* Constitution was presented in the state courts and that these courts were apprised of the nature or substance of the federal claim at the time and in the manner required by the state law. (emphasis in original).

The majority opinion states that petitioner "did not mention the Constitution or cite any federal cases", but significantly fails to

---

1. In *Braden*, the Supreme Court held that the United States District Court for the Western District of Kentucky might issue a writ against the State of Kentucky on behalf of an Alabama convict incarcerated in an Alabama prison.

disclose that neither did the district attorney. Two Circuits have squarely held that, under such circumstances, there has not been an exhaustion of State remedies. *Paullet v. Howard,* 634 F.2d 117, 119–20 (3d Cir.1980); *Thomas v. Wyrick,* 622 F.2d 411, 413–14 (8th Cir.1980). *Cf. Smith v. Digmon,* 434 U.S. 332, 98 S.Ct. 597, 54 L.Ed.2d 582 (1978) (petitioner's constitutional claim "squarely raised" in his State court briefs and "vigorously opposed" in the State's brief).[2]

My colleagues suggest that petitioner's claims concerning the "appearance of bias" could be construed as a squarely presented argument that he had been· deprived of federal due process. I respectfully disagree. The cases cited in the majority opinion deal with whether a judge acted improperly in participating in a trial, not with whether an otherwise qualified judge made improper rulings during the course of trial. "[T]he touchstone of due process analysis . . . is the fairness of the trial" not "the appearance of justice." *Smith v. Phillips,* 455 U.S. 209, 219, 102 S.Ct. 940, 947, 71 L.Ed.2d 78 (1982). To constitute a denial of due process, "the acts complained of must be of such quality as necessarily prevents a fair trial." *Lisenba v. California,* 314 U.S. 219, 236, 62 S.Ct. 280, 290, 86 L.Ed. 166 (1941). If a trial court's comments result in constitutional error, it is because of the nature of the comments, not the qualifications of the judge. *See United States v. Agurs,* 427 U.S. 97, 110, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342 (1976); *Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974); *Corbett v. Bordenkircher,* 615 F.2d 722, 723–24 (6th Cir.), *cert. denied,* 449 U.S. 853, 101 S.Ct. 146, 66 L.Ed.2d 66 (1980).

In order to determine whether the trial judge engaged in "forensic misconduct", an appellate court should examine the entire trial record so as to put the judge's words in proper perspective. *Daley v. United States,* 231 F.2d 123, 128 (1st Cir.), *cert. denied,* 351 U.S. 964, 76 S.Ct. 1028, 100 L.Ed. 1484 (1956).

To assess confidently the validity of this sort of attack upon the trial judge, it is necessary to read the voluminous transcript from cover to cover. *Id.*

*See also United States v. McCarthy,* 473 F.2d 300, 307–08 (2d Cir.1972); *United States v. Cruz,* 455 F.2d 184, 185 (2d Cir.), *cert. denied,* 406 U.S. 918, 92 S.Ct. 1769, 32 L.Ed.2d 117 (1972); *United States v. Switzer,* 252 F.2d 139, 144 (2d Cir.), *cert. denied,* 357 U.S. 922, 78 S.Ct. 1363, 2 L.Ed.2d 1366 (1958). Two federal judges have already examined the entire trial record in the instant case and have concluded that petitioner was not denied a fair trial. 663 F.3d at 1156, 1158. This hardly demonstrates that there was a compelling need for the State courts to go unrequested beyond New York's own rules governing judicial conduct into the area of federal due process.

In cases such as this, we would be better advised to follow the generally prevailing rule that "[w]hen a federal court is unable to determine unequivocally that an issue has been considered and ruled upon by the state courts, comity requires that the initial determination of the issue be made by the state courts." *Tyler v. Swenson,* 527 F.2d 877, 880 (8th Cir.), *cert. denied,* 425 U.S. 915, 96 S.Ct. 1515, 47 L.Ed.2d 766 (1976). *See also Brown v. Cuyler,* 669 F.2d 155, 157–58 (3d Cir.1982); *Echevarria v. Bell,* 579 F.2d 1022, 1025 (7th Cir.1978); *Durkin v. Davis,* 538 F.2d 1037, 1041–42 (4th Cir. 1976); *Williams v. Wainwright,* 410 F.2d 144, 145 (5th Cir.1969), *cert. denied,* 398 U.S. 943, 90 S.Ct. 1846, 26 L.Ed.2d 281 (1970).

---

**2.** *See also County Court of Ulster County, New York v. Allen,* 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979), where the Court said:

> Although respondents' memorandum did not cite the provision of the Constitution on which they relied, their citation of our leading case applying that provision, in conjunction with their use of the word "unconstitu-

tional," left no doubt that they were making a federal constitutional argument. Indeed, by its responses to that argument at every step of the way, the State made clear that it, at least, understood the federal basis for the claim. *Id.* at 148 n. 5, 99 S.Ct. at 2220 n. 5. That clearly is not what happened in the instant case.

During the 1943, 1944 and 1945 fiscal years, State prisoners filed an average of 451 federal habeas corpus petitions per year. *United States v. Hendricks,* 213 F.2d 922, 929 (3d Cir.), *cert. denied,* 348 U.S. 851, 75 S.Ct. 77, 99 L.Ed. 670 (1954). During the twelve month period ending June 30, 1981, a total of 23,607 petitions were filed by State prisoners, of which 7,790 sought habeas corpus relief. Annual Report of the Director of the Administrative Office of the United States Courts 63 (1981). Petitions by State prisoners represented 13.1% of all cases filed during that year. *Id.* at 61. I respectfully suggest that federal judges who complain about the "burden" of trying diversity cases should continue to reject habeas corpus petitions from lawyers who have not evidenced sufficient respect for the State appellate courts to properly present their constitutional arguments in those courts. By condoning such slipshod practices, we encourage their growth.

### Addendum [3]

During the past three years, the Supreme Court granted certiorari and reversed seventeen cases in which section 2254 writs had been granted state prisoners. Five of these reversals were based upon the petitioners' failure to exhaust their state remedies. *Mabry v. Klimas,* 448 U.S. 444, 447, 100 S.Ct. 2755, 2757, 65 L.Ed.2d 897 (1980) (per curiam); *Duckworth v. Serrano,* 454 U.S. 1, 102 S.Ct. 18, 70 L.Ed.2d 1 (1981) (per curiam); *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *Anderson v. Harless,* —— U.S. ——, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982) (per curiam). If there is a message in these holdings, and I believe there is, the message does not seem to be having the desired effect on the lower courts.

*Anderson v. Harless, supra,* reversed *Harless v. Anderson,* 664 F.2d 610 (6th Cir. 1981), one of the cases upon which my colleagues originally relied. However, my colleagues now dismiss the Supreme Court's

reversal as if it were entirely unrelated to the issues now before us. I suggest that, in brushing aside the *Anderson* holding, this Court is repeating what it did in *Phillips v. Smith,* 632 F.2d 1019 (2d Cir.1980), *rev'd sub nom. Smith v. Phillips, supra,* 454 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982), *i.e.,* doing what the Supreme Court has said should not be done. *Id.* at 1024 (Van Graafeiland, J. dissenting).

As already pointed out, it is the majority's position that, if a petitioner's state court claim rests on a factual matrix that is within the mainstream of due process adjudication, this is sufficient to alert the state court to the claim's constitutional nature. That is precisely the argument that the Supreme Court rejected in *Anderson v. Harless, supra.* Referring to the Court of Appeals' opinion, the *Anderson* Court said:

> The court held that respondent's claim had been properly exhausted in the state courts, because respondent had presented to the Michigan Court of Appeals the facts on which he based his federal claim and had argued that the malice instruction was "reversible error".

> .   .   .   .   .

> It is not enough that all the facts necessary to support the federal claim were before the state courts ... or that a somewhat similar state-law claim was made.

In support of this legal proposition, the Court cited *Picard v. Connor, supra,* 404 U.S. at 277, 92 S.Ct. at 513, where the Court, in reversing the grant of a section 2254 writ, said:

> To be sure, respondent presented all the facts. Yet the constitutional claim the Court of Appeals found inherent in those facts was never brought to the attention of the state courts.

The *Anderson* court also cited with approval *Wilks v. Israel,* 627 F.2d 32 (7th Cir.), *cert. denied,* 449 U.S. 1086, 101 S.Ct. 874, 66 L.Ed.2d 811 (1980), in which Judge Wood,

---

**3.** The preceding paragraphs were written as the complete dissenting opinion prior to the Supreme Court's decision in *Anderson v. Har-*

*less,* —— U.S. ——, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982) (per curiam).

writing for the Court of Appeals for the Seventh Circuit, said:

> The fact that all of the facts upon which the petitioner relies were presented to the state courts is insufficient to establish exhaustion.

*Id.* at 38.

This Court's holding in *Gayle v. LeFevre*, 613 F.2d 21 (2d Cir.1980), was also cited with approval by the Supreme Court in *Anderson.* In that case, as here, petitioner's claim that the conduct of the trial judge had deprived him of a fair trial was fully presented to the State appellate courts. *Id.* at 22. Moreover, petitioner's Appellate Division brief had commented upon the "unconstitutionally conducted interrogation". *Id.* n. 2. Citing *Picard v. Connor, supra,* 404 U.S. at 276, 92 S.Ct. at 512, we held, nonetheless, that petitioner had not exhausted his state claims. It seems to me that, when we turn our backs on one of our own opinions which the Supreme Court has cited with approval, the Supreme Court's citation of that opinion should not be ignored in favor of a quotation from a footnoted dictum.

In short, *Anderson v. Harless* fortifies me in my belief that this Court's *en banc* opinion disregards the Congressional intent expressed in section 2254, as that intent has been interpreted by the Supreme Court. The opinion is also manifestly unfair to the people of the State of New York, whose courts are as much entitled as federal courts to have constitutional issues present- ed to them with the "concrete adverseness which sharpens the presentation of issues." *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962).