**Ronald MONROE, Petitioner,**

v.

**The PEOPLE OF the STATE OF NEW YORK and Robert Abrams, Attorney General of the State of New York, Respondents.**

**No. 82 Civ. 1151.**

United States District Court,
S.D. New York.

July 8, 1983.

---

Montclare & Guay, New York City, for
petitioner; Paul D. Montclare, Richard F.
Guay, New York City, of counsel.

Mario Merola, Dist. Atty., Bronx County,
New York City, for respondents; Alan D.

Kaplan, Asst. Dist. Atty., New York City,
of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

The petitioner applied to this Court for a
writ of habeas corpus pursuant to 28 U.S.C.,
section 2254, seeking to void his state court
conviction of attempted assault, first de-
gree, entered upon his plea of guilty. He
asserts separate grounds of violation of his
federal constitutional rights: (1) denial of
his Sixth Amendment right to the effective
assistance of counsel based upon a conflict
of interest by the joint representation by
his attorney of petitioner and his codefend-
ant in negotiating a plea bargain agree-
ment; (2) denial of his motion to withdraw
his plea of guilty based upon such alleged
conflict of interest; and (3) denial of due
process of law under the Fourteenth
Amendment in that upon the hearing of his
motion to withdraw his guilty plea he was
foreclosed an adequate opportunity to es-
tablish his asserted claim that a conflict of
interest existed.

Familiarity is assumed with this Court's
opinion dismissing the petition without
prejudice upon the ground that petitioner
had failed to exhaust state remedies with
respect to his Sixth and Fourteenth Amend-
ment claims; that even if he had exhausted
state remedies as to his other asserted
claim, the Court nonetheless was required
to dismiss his petition because it contained
both exhausted and unexhausted claims.[1]
Upon appeal the case was remanded to this
Court for reconsideration of the exhaustion
question in light of *Daye v. Attorney Gen-
eral,*[2] and consideration of the requirements
of *Rose v. Lundy,*[3] in the light of *Rock v.*

1. *Monroe v. New York,* 539 F.Supp. 1103 (S.D.
N.Y.1982), *remanded* (2d Cir. Jan. 5, 1983).

2. 696 F.2d 186 (2d Cir.1982) (en banc).

3. 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379
(1982) (court must dismiss habeas corpus peti-

tion containing both exhausted and unexhaust-
ed claims, although the petition can always be
amended to delete unexhausted claims, subject
to risk of dismissal of subsequent federal peti-
tions with respect to unexhausted claims).

*Coombe.*[4] On this renewed application following remand, petitioner has expressly limited his ground for relief solely to his Sixth Amendment claim and has unequivocally withdrawn all other claims.

■ The first issue is whether petitioner has adequately presented his Sixth Amendment claim to the state courts. This Court was and remains of the view that a fair reading of both the majority and minority opinions of the New York State Court of Appeals indicates that it considered and only passed upon an issue of state law and procedure, to wit, whether its prior holdings, "to the effect that the trial court must ascertain on the record whether jointly represented defendants perceive the risks of that representation, should be applied in a case where one attorney negotiates a plea bargain for multiple defendants."[5] In short, should the existing rule applicable to multiple representation *upon a trial* be applied when one attorney represents multiple defendants *upon a guilty plea proceeding.* While this Court is *dubitante* that there has been exhaustion of the federal constitutional issue here presented, especially so in the light of *Anderson v. Harless,*[6] the doubt must yield in view of the broad sweep of *Daye. Daye* specifies that if a petitioner has "informed the state courts of both the factual and the legal premises"[7] of his federal claim, he has satisfied the exhaustion requirement of section 2254(b). All four criteria under the *Daye* rule exist here: Monroe relied upon "pertinent federal cases employing constitutional analysis" and

"state cases employing constitutional analysis in like fact situations"[8] in his appeals to the state courts; his asserted claim of "[in]effective assistance of counsel"[9] was "in terms so particular as to call to mind a specific right protected by the Constitution";[10] and his claim was "well within the mainstream of constitutional adjudication."[11] Thus, the exhaustion requirement of section 2254(b), as interpreted in *Daye,* has been satisfied. Accordingly, we consider the merits of the application.

The basis of petitioner's Sixth Amendment claim is that he and his codefendant, Frederick Bryant, were represented by the same attorney—Otto Fusco. Monroe claims that the prosecution's case against the two defendants differed substantially, and that his guilty plea was part of a package deal designed primarily to benefit Bryant. The argument continues that these and other circumstances evidence an "inherent conflict of interest" constituting a denial of Monroe's right to effective assistance of counsel.

■ Prior to his sentencing, Monroe discharged Fusco and retained new counsel, who raised the conflict of interest issue and moved to withdraw Monroe's guilty plea on that ground. The trial court conducted a hearing to determine whether there had actually been a conflict of interest. The petitioner, his new counsel, Fusco his former counsel, and the prosecutor were all present. Although none of them was sworn, the court heard from all four. The

---

4. 694 F.2d 908 (2d Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1773, 76 L.Ed.2d 345 (1983) (a habeas corpus petitioner, either pro se or through his attorney, may unequivocally in writing or orally withdraw and abandon his unexhausted claims contained in a mixed petition, thereby dispensing with the requirement that a new petition be filed).

5. *People v. Monroe,* 54 N.Y.2d 35, 38, 444 N.Y. S.2d 578, 579, 429 N.E.2d 97, 98 (1981), *cert. denied,* 455 U.S. 947, 102 S.Ct. 1446, 71 L.Ed.2d 660 (1982) (citations omitted).

6. —— U.S. ——, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982) (per curiam) (finding a failure of exhaus-

tion where claim had not been presented to or considered by the state courts).

7. 696 F.2d at 191.

8. *Id.* at 194.

9. Petitioner's Brief to the New York Court of Appeals at 6.

10. 696 F.2d at 194.

11. *Id.*

Court announced the purpose of the hearing to consider Monroe's charge of conflict of interest and invited a response from Fusco. Thereupon he made a detailed statement setting forth facts with respect to the crime of attempt to commit murder in the second degree and the role played by each defendant as related to him by petitioner.[12] Monroe was engaged in a policy operation and a player in the numbers game contended that her number had won, which petitioner denied and refused payment. Later, while petitioner was entering his automobile the common law husband of the lady fired shots at him and removed money that was on the seat of his automobile. Petitioner fled without injury. Some three or four days later petitioner and his codefendant, Frederick Bryant, each armed with a weapon, sought out the assailant and located him in an automobile. The codefendant fired shots at the assailant, who was struck. The defendants were apprehended in a car in which two guns were found. Both guns were loaded and operable and one had been fired. Under New York law, this permitted a presumption against petitioner.[13]

Fusco's recital continued that both defendants were acting in concert; that there was no conflict of interest and that the motive for the shooting was the previous attack upon petitioner. The attorney then related his efforts to obtain the prosecution's consent to pleas of guilty to a lesser offense than originally charged, under which Bryant was to receive the greater sentence, nine years without a minimum, whereas petitioner was to receive a sentence of zero to four years. Fusco denied that, as petitioner charged, he ever told him if he pled guilty it would make it easier for Bryant. Moreover, the attorney further stated that he advised petitioner of his right to a trial and in no respect was he coerced to plead guilty.

The Court questioned petitioner with respect to the voluntariness of his plea, which petitioner did not dispute. The petitioner's new attorney stated that he believed Fusco had acted "honestly and in good faith and that he believed there was no conflict," but urged that there was "an intrinsic conflict of interest" and that petitioner was "never really made aware of the fact that he could win this case under the circumstances because any admissions he made to Mr. Fusco under the facts and circumstances of the case not provable [sic] by the prosecution."

The Assistant District Attorney was also heard. He noted that Bryant had made a full confession that had been stenographically recorded. Also, that Monroe had made a statement, the gist of which had been recited by Mr. Fusco and that the defendants claimed they shot at the complainant because he "claimed to have won the number and it was a simple revenge case; that both guns were found in the car [and] the defendants were in the car"; and that the weapons, both loaded, were removed from the defendants and that the People had a "fairly strong case." The prosecutor also noted that Monroe had acknowledged taking his own "action" against the complainant "because of what was done to [him]." The court at the end of the hearing suggested that petitioner's counsel could file affidavits with an opportunity for the prosecution to respond. The prosecutor indicated he did not deem this necessary. The court announced it would reserve decision and render its ruling at the time fixed for sentence. Two months later, at the adjourned date of sentencing but before imposition of sentence, the court announced its findings of fact and concluded that "there was no conflict of interest in the joint representation of the defendant and the codefendant."[14] Such a factual finding is presumed to be correct and if upheld

---

12. Monroe waived his attorney/client privilege.

13. See N.Y.Penal Law § 265.15(3) (McKinney 1980); County Court v. Allen, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).

14. Record at 40–41.

disposes of Monroe's claim.[15] However, as permitted under 28 U.S.C., section 2254(d), he challenges the state court's determination.

First, Monroe claims that the hearing was inadequate. He argues that he was denied an opportunity to present evidence on his own behalf and to examine witnesses. This statement finds no support in the record. The trial court heard from Fusco, the prosecution, Monroe's attorney and Monroe himself. There is no indication that any request to have them sworn was made. Similarly, although no one of the witnesses was questioned by Monroe's counsel, at no point did he request to do so. Nor did he suggest that the testimony of any person not present was desired. Simply put, there is nothing in the record that supports petitioner's contention that he was in any way thwarted from presenting evidence in his own behalf or from cross-examining other parties. The claim that the petitioner was deprived of the opportunity to fully and fairly present his case for the withdrawal of his guilty plea is without substance.

The second contention is that the state court determination is not fairly supported by the record. It, too, is unsupportable. On the basis of all the evidence,[16] the state court concluded that there had been no actual conflict of interest. The court found Fusco's statements to be "clear and convincing," that Monroe and Bryant had been acting in concert, and that Fusco had ade-quately informed them of the alternative strategies they could take. The court concluded that the plea bargain was a "fair disposition ... achieved through effective assistance of counsel,"[17] and that the "guilty plea was made freely and with full knowledge of the consequences and with full benefit of legal counsel."[18] Accordingly, the court denied Monroe's motion to withdraw his guilty plea and sentenced him in accordance with the terms of the plea bargain agreement.[19] The Appellate Division and the New York Court of Appeals affirmed, and a subsequent motion to vacate the judgment was denied. Indeed, the majority of the New York State Court of Appeals specifically held that "on the facts of this case, [the] defendant has not established that a significant possibility of a conflict of interest existed."[20] So too, the minority, although disagreeing as to the procedure employed, noted "in any particular case, including the instant case, the fact may indeed be that there was no conflict...."[21]

■ Petitioner urges this Court to reject the state courts' conclusion. He maintains that there was an inherent conflict of interest because the plea bargain was a package deal and there was a great disparity in the type and quantum of evidence against each defendant, with the evidence being overwhelming against Bryant. In particular, Monroe stresses that it was Bryant who actually shot Nelson and gave a confession.

15. See, e.g., United States v. Lovano, 420 F.2d 769, 773 (2d Cir.), cert. denied, 397 U.S. 1071, 90 S.Ct. 1515, 25 L.Ed.2d 694 (1970) ("The rule in this circuit is that some specific instance of prejudice, some real conflict of interest, resulting from a joint representation must be shown to exist before it can be said that an appellant has been denied the effective assistance of counsel.") (citations omitted). See also Culyer v. Sullivan, 446 U.S. 335, 348 & n. 14, 100 S.Ct. 1708, 1718 & n. 14, 64 L.Ed.2d 333 (1980).

16. Including evidence petitioner claims was discovered after the hearing, the substance of which had in fact been before the state court.

17. Record at 39.

18. Id.

19. Although the indictment charged petitioner with attempted murder in the second degree, assault in the first degree and two counts of criminal possession in the first degree, Monroe was permitted to plead guilty to the reduced charge of attempted assault in the first degree. The sentence imposed was also consonant with the plea bargain agreement.

20. 54 N.Y.2d at 37, 444 N.Y.S.2d at 578, 429 N.E.2d at 97.

21. Id. at 40, 444 N.Y.S.2d at 580, 429 N.E.2d at 99.

The factual issue of whether the plea bargain was a "package deal," however, was rejected by the state court. The determination turned on credibility and Monroe has presented no basis for disturbing it. Furthermore, even a cursory review of the record reveals that the evidence against both defendants was powerful. Although Monroe did not pull the trigger, he drove the car in which the guns were found, had a motive to retaliate against the complainant and admitted he had done so in a statement. While no doubt a more formal hearing at which the witnesses were sworn instead of taking their statements on the record would have been desirable, a full opportunity was afforded to defendant and his new attorney to present their claims in moving for the withdrawal of the plea. Moreover, no formal hearing was requested. The petitioner was afforded a full and fair hearing on his claim by the state courts. The evidence, taken as a whole, provided a sufficient basis upon which to conclude that Fusco's joint representation of the defendants did not create a conflict of interest.

Thus petitioner's claim is without substance, and the petition is dismissed.