UNITED STATES of America ex rel. Earl BROWN, Petitioner,

v.

Michael LANE, Respondent.

No. 87 C 6564.

United States District Court, N.D. Illinois, E.D.

May 2, 1988.

Earl Brown, pro se.

Michele I. Lavin, Terence Madsen, Asst. Attys. Gen., Neil F. Hartigan, Atty. Gen. of Ill., Criminal Appeals Div., Chicago, Ill., for respondent.

## MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

Prior to Petitioner Earl Brown's jury trial in the Circuit Court of Cook County on charges of rape and deviate sexual assault, Brown's counsel made a motion *in limine* to preclude the State from impeaching Brown with evidence of two prior rape convictions. The trial judge denied the motion, and Petitioner did not take the stand. Petitioner was convicted on both charges and sentenced to concurrent 60–year prison terms. Petitioner appealed his conviction on grounds that the trial court had erred in refusing to bar the use of his prior convictions. The Appellate Court of Illinois, First District, affirmed the convictions. Petitioner did not seek leave to appeal to the Illinois Supreme Court.

The case is now before this court on a petition for a writ of habeas corpus. The petition asserts that the trial court's denial of the motion *in limine* violated Petitioner's rights under the Fifth, Sixth, Seventh, Eighth, Thirteenth, and Fourteenth Amendments. Petitioner apparently asserts that the denial of the motion prevented him from testifying in his own defense, and thereby infringed his rights under these amendments. The State asserts that the petition must be denied because Petitioner has procedurally defaulted. We agree with the State, and therefore deny the petition.[1]

### The Trial

The main witness at trial was complainant Margaret Grzetich, who testified as follows. At about 2:00 p.m. on February 1, 1983, Petitioner came to her office on the second floor of Kitzing, Inc., and told her that a former Kitzing employee was on the fifth floor and everyone was going up to say good-bye. She told Petitioner, who was a maintenance worker in the building, that she would try to come. (R. 182–84) She then went to see Tac Matsui, a coworker, on the third floor. On her way down the stairs back to her office, Petitioner stopped her and again asked that she say good-bye to the former employee. She agreed and went up to the fifth floor with Petitioner. (R. 186)

When they got to the fifth floor, she saw that it was nothing but an open warehouse with storage boxes scattered about. Petitioner said that the former employee was in the back of the room. After taking a few steps into the room, Grzetich turned to Petitioner and asked where the former employee was. He then grabbed her arm and put a box cutter knife to her throat. (R. 188–89) She asked to be let go, but Petitioner told her to shut up and pushed her onto

---

1. Though Petitioner did not file a formal motion for appointment of counsel, he requested appointment of an attorney in his Response to the State's Motion for Summary Judgment. We deny his request for an attorney on its merits, without regard to its lack of timeliness. Petitioner's procedural default is clearcut, as is his inability to show prejudice to his case therefrom. Thus, we do not believe that appointing counsel would serve any useful purpose.

the landing of an abandoned stairway. (R. 191) He told her that he would kill her if she did not do what he wanted her to do, grabbed her by the hair, and continued to hold the knife at her throat. (R. 192) She repeatedly asked to be let alone, but Petitioner responded only by yanking harder on her hair and coming closer with the knife. He then told Grzetich that she had until the count of three to remove her clothes, or he would kill her. At this time he pressed his forearm into her throat. When Grzetich begged to be let go, he told her to "shut the fuck up." (R. 193–96) She began unbuttoning her blouse and skirt, and Petitioner pulled her clothes down. Petitioner tried to kiss Grzetich, who turned away. (R. 200) Petitioner pushed her onto the floor in a corner of the landing, and then pulled her into a laying position. He told her to spread her legs, pressed his knee into her thigh, and then put his mouth on her vagina and performed oral sex on her. (R. 201–05) He then unbuttoned his pants and told Grzetich to put his penis into her vagina. When she said no, he put it in himself and had intercourse with her. (R. 206)

Petitioner then noticed blood on Grzetich, and tried to get her to promise not to tell anyone what he had done. He gave her her clothes, and she began to dress. Petitioner made her start all over again so she would "look right." (R. 207–08) Petitioner asked her to promise that she would give him twenty minutes to leave the building, and she agreed. Petitioner then left the landing and went into the warehouse room. When Grzetich no longer heard footsteps and heard the door to the regular stairway close, she walked through the storage room to the stairway. Petitioner appeared from behind some boxes and asked what she was doing. She again promised to give him time to leave. (R. 209–10) When she again saw the door close, she opened it and ran down the stairs to Tac Matsui's office. (R. 210–11)

Grzetich asked Matsui for help. (R. 210–11) He gave her a towel for the blood on her hand and neck, and went and got Mrs. Kitzing, the vice president of the company. (R. 212) Grzetich told Mrs. Kitzing what

had happened, and the police were called. Grzetich was taken to the emergency room, where she got three stitches in her hand and thirteen stitches in her throat, and her back was cleansed. (R. 213) Her clothes were dirty, bloody, and ripped. (R. 215–17) On cross-examination, Ms. Grzetich denied that she was having a relationship with Petitioner. (R. 228)

The other witnesses included Mrs. Kitzing, the doctor who treated Ms. Grzetich, a police department microanalyst, Kitzing, Inc.'s comptroller, and police officer John Thomas. Mrs. Kitzing testified that Grzetich was shaking and crying in Matsui's office, and her clothes were in disarray. She also stated that Grzetich's hand and neck were bleeding, and that Grzetich told her that Earl Brown had raped her. (R. 271–72) Dr. Randolph Fok testified that Grzetich was very upset when she arrived at the emergency room. He found lacerations on the neck and on the hand, and multiple lacerations between the shoulder blades. He also found semen in the vagina. (R. 283–85) The technician testified that microscopic examination of vaginal smears taken at the hospital and of stains on Ms. Grzetich's underwear showed sperm to be present. The examination of her underwear also revealed the presence of human blood. (R. 308–19) Kitzing's comptroller testified that Petitioner never punched out on the timeclock on February 1, 1983. (R. 327) Officer Thomas testified that a warrant for Petitioner's arrest was issued February 3, 1983, that he and other officers searched unsuccessfully for Petitioner for two weeks, and that Petitioner turned himself in to the police department on February 17, 1983. (R. 396–402)

During final arguments, the prosecution concentrated on Ms. Grzetich's testimony regarding the use of force, and also reviewed the testimony of her fellow workers and of the medical personnel. In reviewing the evidence of force, the prosecutor repeatedly asked, "What have you heard different from this witness stand?" (R. 420) The defense conceded that Petitioner had had intercourse with Ms. Grzetich on the day in question (R. 423–24), but argued that the State had not proved the use of

force beyond a reasonable doubt. (R. 424–441)

### Discussion

The petition for a writ of habeas corpus states that the trial court's denial of the motion *in limine* violated Petitioner's rights under the Fifth, Sixth, Seventh, Eighth, Thirteenth, and Fourteenth Amendments. The State asserts that the petition must be denied because Petitioner has procedurally defaulted.[2] As we explain below, we agree with the State, and therefore deny the petition.

It is settled law in Illinois that the failure to present a constitutional claim on direct appeal operates as a procedural default and hence a waiver of that claim. *United States ex rel. Duncan v. O'Leary*, 806 F.2d 1307, 1313 (7th Cir.1986). A state prisoner who has so defaulted may not obtain federal habeas relief absent a showing of cause and actual prejudice. *Id.*

■■■The requirement of "presenting" a constitutional claim to the appellate court is not satisfied simply by placing the relevant facts before the court. Rather, the test is whether the claim was "presented in such a way as to fairly alert the state court to any applicable constitutional grounds for the claim." *United States ex rel. Sullivan v. Fairman*, 731 F.2d 450, 454 (7th Cir.1984). In *Sullivan*, the Seventh Circuit elaborated on this test as follows:

> [W]here the argument presented to the state court does not: "(a) rel[y] on pertinent federal cases employing constitutional analysis; (b) rel[y] on state cases employing constitutional analysis in like fact situations, (c) assert[ ] the claim in terms so particular as to call to mind a specific right protected by the Constitution, ... [or] (d) alleg[e] a pattern of facts that is well within the mainstream of constitutional litigation," we cannot say that the state court has considered or had a fair opportunity to consider and correct the subsequently alleged constitutional violations.

*Id.* (quoting *Daye v. Attorney General of New York*, 696 F.2d 186, 194 (2d Cir.1982) (en banc)).

■ We do not believe that the state appellate court was made aware of a constitutional basis for Petitioner's appeal. The heading of the argument section in Petitioner's brief asserted merely that "The trial court erred in denying defendant's motion to bar use of his prior convictions," and the brief argued only that the prejudicial effect of the convictions outweighed their probative value. No constitutional arguments were made, nor were any constitutional cases (federal or state) cited. Moreover, we do not think that Petitioner "assert[ed] the claim in terms so particular as to call to mind a specific right protected by the Constitution, ... [or] alleg[ed] a pattern of facts that is well within the mainstream of constitutional litigation." The appellate court's opinion reflected no awareness that a constitutional issue had been presented, and, for the reasons we cite above, we simply do not think they were fairly alerted to any constitutional basis for the appeal. Because Petitioner did not present his federal constitutional claims on direct appeal, he may not obtain habeas relief on these claims unless he shows cause for and actual prejudice from the procedural default. *See United States ex rel. Duncan v. O'Leary*, 806 F.2d 1307, 1313 (7th Cir.1986).

■ We need not consider whether Petitioner can show cause for his failure to raise the constitutional claims on direct appeal, for we find that Petitioner cannot show prejudice from the trial court's denial of the motion *in limine*. The only issue at trial was consent. The Illinois Appellate Court concluded that the State's evidence of force was "overwhelming," and we agree.

The victim testified that Petitioner held a box cutter knife to her throat and threatened to kill her if she did not do as she was told, and then proceeded to perform oral sex on her and engage in intercourse with her as she lay on the landing of an abandoned stairwell. The clothing she wore that day, which was admitted into evidence, was torn, bloody, and dirty. The victim's

---

**2.** The State does not contend that Petitioner failed to exhaust his remedies under state law.

employer testified that Grzetich was shaking and crying after the incident, her clothes were in disarray, and she was bleeding from the hand and neck. The employer also stated that Grzetich told her that she had just been raped by Petitioner. The examining physician found lacerations to the victim's neck and hand (as well as her back), and reported that she was extremely upset. In light of this extensive evidence of force, we simply do not believe that Petitioner could have suffered actual prejudice from the trial court's denial of his motion *in limine*, which allegedly violated his constitutional rights.

Petitioner has also procedurally defaulted by failing to present his constitutional claims to the Illinois Supreme Court. *See Nutall v. Greer*, 764 F.2d 462, 464 (7th Cir.1985). This default, like his failure to raise the constitutional claims on direct appeal, waives federal habeas relief unless Petitioner shows cause and prejudice. As we explained above, we believe that the State's evidence was so overwhelming that Petitioner could not have suffered prejudice from the alleged constitutional violation. Therefore, we find that habeas relief is not available to Petitioner.[3]

### Conclusion

For the foregoing reasons, the petition for a writ of habeas corpus is denied.

---

**3.** Because we find that Petitioner has waived federal habeas relief by procedurally defaulting, we need not consider the State's other arguments in favor of denying Brown's petition.