■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TOMASITA RODRIQUEZ, Appellant. — Judgment of conviction, Supreme Court, Bronx County, rendered April 18, 1979, after jury trial, unanimously reversed, on the law, and, as to the second count of the indictment, assault, first degree (Penal Law, § 120.10, subd 1), matter remanded to Supreme Court, Bronx County, for a new trial, and, as to the third count of the indictment, criminal possession of a weapon, fourth degree (Penal Law, § 265.01, subd [2]), the jury's verdict of guilty is vacated, and its earlier verdict of acquittal reinstated, and directed to be entered as the judgment of the court on that count. At the outset, we must indicate that, since defendant-appellant's trial counsel

failed to preserve for appellate review the two fundamental errors we find, we exercise discretion in the interest of justice to consider them on this appeal. In this bizarre case, the complainant testified that defendant accompanied him to his apartment one evening; that he stripped partially so that she might massage him; that he dozed off; that he awoke, bleeding from the head and arm; that she was standing there with a meat cleaver in her hand; that he was removed to hospital, where he was treated for his wounds, undergoing brain surgery. His severe injuries were consistent with the use of a sharp, heavy instrument. The only other evidence relevant to our disposition came from defendant and the arresting detective: by defendant, that, resisting an attempt at rape by the complainant, she "kept fighting him off *** into the kitchen" and "picked up something heavy"; the detective added that, when she surrendered at the precinct some time after the event, she told him that, "when they were in the apartment, he came out nude and he grabbed her and she picked up an object and did it." Neither party to the episode admitted possession of a cleaver; the instrument never was produced at the trial. Justification being the theme of the defense, the issue comes within the purview of section 35.15 (subd 2, par [b]) of the Penal Law.[1] However, instead of charging pursuant to that applicable section, the court charged under paragraph (a) of subdivision 2, which exculpates one who uses deadly physical force upon another in the reasonable belief "that such other person is using or about to use deadly physical force." There is no evidence in this case to establish a reasonable belief by defendant that the complainant intended to use deadly force on her, and, as the prosecutor candidly concedes, defendant was thereby deprived of a fair trial on her projected defense, and is entitled to trial anew on this count. We turn now to the other error. The jury returned a verdict of not guilty on a first count of attempted murder, but guilty of the second count of assault, second degree, with a meat cleaver, and not guilty of the charge that defendant had "carried and possessed a meat cleaver with intent to use the same unlawfully against" the complainant. Immediately upon rendition of the verdict, the court said, addressing the jury: "I would like you to go back and deliberate further. Having found the defendant guilty of the second count, which is an intent to use a weapon, how you would find the defendant as you did with reference to the final count, I can't understand, so you go back and discuss it further to make sure that you are correct in that verdict, as to that final count. Please go back and deliberate further." In considering whether this was error, it must be borne in mind that two separate intents were involved in the picture presented, the first being the intent charged in the second count of assault ("to cause serious physical injury") and the second being the intent charged in the third count, weapon possession ("to use the same unlawfully against [complainant]"). At no point did the court use the word "repugnant," saying only that the verdict was not understood. The verdict was no more than inconsistent and this quality in a verdict "does not invalidate it" (People v Cwikla, 60 AD2d 40, 45). A classic illustration of repugnance is presented in People v Cintron (67 AD2d 1007, 1008), the converse of our situation. In Cintron, the jury acquitted of assault, where self-defense had been claimed, but chose to convict of possession of

---

1. "2. A person may not use deadly physical force upon another person *** unless: *** (b) He reasonably believes that such other person is *** attempting to commit a *** forcible rape".

the gun with which the assault was said to have been committed. There was no other proof in the case of the requisite intent with which the weapon was possessed save that intent expressed by the assault itself. The verdict was pronounced to be repugnant, and the Second Department reversed. Had our jury convicted of the weapon charge, acquitting of assault, simple logic would dictate a *Cintron* result, whereas in our situation there are several possible explanations of how the jury might have arrived at a seemingly illogical result.[2] Whether the jury had been confused by the court's charge or whatever, there are a number of possible reasons why the jury chose to acquit on the weapon count. Though the court instructed that a momentary possession is sufficient, the other language used could easily have meant to the jury that the intent connected with possession must be formed *prior* to the use of the weapon. It will be recalled that there is no evidence anywhere in the record that the weapon used came into defendant's hands before the moment that she actually used it. Neither jury nor court ever saw it. Or the jury may have been confused by the necessity to find an intent to use *unlawfully*, when the charge mistakenly described a lawful use not here involved, i.e., to repel deadly force. The intent to inflict serious injury may easily be found manifest in the attack itself, as in *Cintron (supra)*, but the jury might easily have been confused by the "momentary possession" charge in considering whether the evidence that she "picked up something heavy" indicated intent to "use unlawfully". Or the jury might have been exercising its historic privilege to acquit as an act of mercy. But, even should it be accepted that inconsistency between two parts of a verdict would justify return for reconsideration, both parts would be inconsistent if either is, and both would have to be returned for reappraisal. (Cf. *People v Salemmo*, 38 NY2d 357.) Here, only the count of which defendant was acquitted was so returned. This instruction was obviously coercive; in effect, the court was telling the jury to conform its questioned verdict on one count to that on the other, approved by retention. On this basis alone the later verdict of conviction on the third count must be set aside, and the verdict of acquittal, first returned into court, reinstated. In any event, "if it is clear that the jury intended to find a defendant not guilty upon any particular count, the court must order that the verdict be recorded as an acquittal of such defendant upon such count." (CPL 310.50, subd 2.) It was patently clear that the jury intended so to find and, as the trial court should have done, we direct accordingly. Concur — Kupferman, J.P., Birns, Sullivan, Markewich and Silverman, JJ.

---

2. While "we cannot look behind the jury's verdict to determine why it chose to acquit on one count and not another" *(People v Hudson,* 70 AD2d 740, 742), we must consider all the possibilities.