**Pasquale MAIORINO, Petitioner,**

v.

**Charles J. SCULLY, Superintendent, Green Haven Correctional Facility, Respondent.**

**No. 90 Civ. 0079 (MEL).**

United States District Court, S.D. New York.

Aug. 30, 1990.

Certificate of Probate Cause Denied Sept. 5, 1990.

---

Pasquale Maiorino, (Alfred Mancuso, Paralegal for petitioner, of counsel), pro se.

Robert M. Morgenthau, Dist. Atty., New York County (Donald J. Siewert, of counsel), New York City, for respondent.

LASKER, District Judge.

Pasquale Maiorino, appearing *pro se*, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (1982). In 1980, after a jury trial in the New York State Supreme Court, New York County, Maiorino was convicted of murder in the second degree (New York Penal Law § 125.25[1]) for having intentionally caused the death of Clay Delauney, and attempted murder in the second degree (New York Penal Law §§ 110.00, 125.25[1]) for the stabbing of Kevin McCullough. His co-defendant, Nicholas Letterese, was convicted of manslaughter in the first degree and assault in the first degree.

At trial, Maiorino and Letterese claimed that they mistakenly entered a bar frequented by gay men, Uncle Charlie's South, where they met the victims, Clay Delauney and Kevin McCullough. They then accompanied the victims to Delauney's apartment in order to purchase some marijuana. Maiorino and Letterese testified that, after setting a scene for seduction that included candlelight and several attempts to ply Maiorino and Letterese with alcohol and narcotics, Delauney and McCullough attempted to forcibly sodomize them and that Maiorino and Letterese were justified in using deadly physical force in order to repel the attack. The prosecution argued that Maiorino and Letterese ap-

proached Delauney and McCullough intent on robbing them. In support of the prosecution's theory, McCullough testified that, after entering Delauney's apartment, Letterese attacked Delauney and McCullough with a candlestick holder and Maiorino stabbed them repeatedly with a letter opener and a clasp knife. Delauney died the next day from his wounds and McCullough was permanently disabled.

The Appellate Division affirmed Maiorino's conviction without opinion, *People v. Maiorino*, 92 A.D.2d 1090, 461 N.Y.S.2d 663 (1st Dep't 1983). The Court of Appeals subsequently denied Maiorino's application for leave to appeal, *People v. Maiorino*, 59 N.Y.2d 975, 466 N.Y.S.2d 1036, 453 N.E.2d 560 (1983).

Maiorino argues that his constitutional rights were violated in two respects. First, he contends that the trial judge, Justice Edwin Torres, improperly failed to instruct the jury that Maiorino was justified in using deadly force if he reasonably believed that the victims intended to forcibly sodomize Maiorino or Letterese.

Second, he claims that his appellate attorney deprived him of effective assistance of counsel on appeal by failing to raise two arguments. He contends that Justice Torres erred by instructing the jury that if Letterese were found guilty of manslaughter in the first degree Maiorino could be convicted of murder in the second degree without, according to Maiorino, having caused the death of Delauney, thereby relieving the prosecution of its burden of proof as to causation. Maiorino also asserts that the limitation of defense counsel's opportunity to comment on the witness McCullough's civil lawsuit against Maiorino deprived Maiorino of a fair trial.

## I. SODOMY–JUSTIFICATION INSTRUCTION

### A. *Procedural Default*

■ The state concedes that Maiorino raised all of his present claims in his brief to the Appellate Division and in his application for leave to appeal to the Court of Appeals and has therefore exhausted all available state remedies. However, the state argues that this court is precluded from reviewing Maiorino's claim regarding the sodomy-justification defense because Maiorino failed to make the objection at trial required by New York Criminal Procedure Law § 470.05(2) to preserve this claim for appellate review. *Wainwright v. Sykes*, 433 U.S. 72, 87–91, 97 S.Ct. 2497, 2506–08, 53 L.Ed.2d 594 (1977). The state points out that when Maiorino raised the sodomy-justification claim on appeal, the state alerted the Appellate Division to Maiorino's procedural default, in addition to arguing that Maiorino was mistaken on the merits. The Appellate Division subsequently affirmed the conviction without opinion. *People v. Maiorino*, 92 A.D.2d 1090, 461 N.Y.S.2d 663 (1st Dep't 1983). The state argues that the affirmance without opinion of Maiorino's conviction indicates that the Appellate Division held that Maiorino's appeal was barred because of his state procedural default.

The argument is unpersuasive in light of the recent United States Supreme Court decision, *Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), in which it was held that, on a petition for a writ of habeas corpus, a federal court may review a federal claim rejected by the state appellate court "unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." 489 U.S. at 263, 109 S.Ct. at 1043, 103 L.Ed.2d at 317. The *Harris* court concluded that "the mere fact that a federal claimant failed to abide by a state procedural rule does not, in and of itself, prevent this Court from reaching the federal claim: 'the state court must actually have relied on the procedural bar as an independent basis for its disposition of the case.'" *Id.* at 261, 109 S.Ct. at 1042, 103 L.Ed.2d at 316.

The state contends that the *Harris* ruling is limited to ambiguous state opinions and that the controlling law in the Second Circuit on affirmances without opinion continues to be *Martinez v. Harris*, 675 F.2d 51, 54 (2d Cir.), *cert. denied*, 459 U.S. 849, 103 S.Ct. 109, 74 L.Ed.2d 97 (1982) (Appellate Division's silent affirmance, where pro-

cedural default is raised as an issue, constitutes a determination of procedural default). However, the Second Circuit indicated that *Martinez v. Harris* was no longer controlling when it stated that *"Harris [v. Reed] changes the law in this circuit"* and cited *Martinez. Peterson v. Scully,* 896 F.2d 661, 664 (2d Cir.1990). Moreover, a number of district courts have explicitly interpreted *Harris'* "plain statement" rule to apply to affirmances without opinion. In *Flores v. Scully,* 1989 WL 123097, 1989 U.S. Dist. LEXIS 12180 (S.D.N.Y.1989) (Cedarbaum, J.), the court held that *Harris* allowed federal habeas review despite the petitioner's possible procedural default where the Appellate Division affirmed his conviction without opinion. *See also Fagon v. Bara,* 717 F.Supp. 976, 986–87 (E.D. N.Y.1989) (where last state court to review conviction affirmed without opinion and did not expressly rely on a procedural default, federal habeas review is not precluded); *Lopez v. Scully,* 716 F.Supp. 736, 738–39 (E.D.N.Y.1989) (affirmance without opinion insufficient to bar federal habeas review; "a clear and unambiguous reliance of procedural default by the state court" is necessary); *Maxwell v. Smith,* 722 F.Supp. 7, 8 (W.D.N.Y.1989) (federal court petitioned for writ of habeas corpus is not precluded from reviewing federal claim that was procedurally defaulted in state court unless the last state court "clearly and expressly" stated that its decision rested on the procedural bar).

Thus, *Harris* makes clear that a "plain statement" that the affirmance is based on a state procedural default is required in order to bar federal habeas review. 489 U.S. at 263, 109 S.Ct. at 1043, 103 L.Ed.2d at 317. An affirmance without opinion does not "clearly and expressly" indicate whether the appellate court relied upon the merits of the claim or the procedural default in rendering its judgment. *Id.* at 263, 109 S.Ct. at 1043, 103 L.Ed.2d at 317. In light of the *Harris* ruling, this court need not "discern what really is not discernable" and therefore may review the petitioner's claim regarding the sodomy-justification instruction on its merits. *Maxwell,* 722 F.Supp. at 8.

### B. Jury Charge

Maiorino contends that Justice Torres' refusal to instruct the jury pursuant to New York Penal Law § 35.15 that Maiorino and Letterese would have been justified in using deadly force if they reasonably believed that Delauney and McCullough intended to forcibly sodomize them deprived Maiorino of due process under the Fourteenth Amendment. The state replies that the evidence was insufficient to support a sodomy-justification charge.

■ "When evidence at trial viewed in the light most favorable to the accused, sufficiently supports a claimed defense, the court should instruct the jury as to the defense, and must when so requested." *People v. Watts,* 57 N.Y.2d 299, 301, 456 N.Y.S.2d 677, 678, 442 N.E.2d 1188, 1189 (1982) (defendant's statement that the victim threatened him with a kitchen knife was held insufficient to require a justification charge). Conversely, where no reasonable view of the evidence supports the claimed defense, the court need not present the question to the jury. *Id.* at 301, 456 N.Y.S.2d at 678, 442 N.E.2d at 1189.

■ Maiorino alleges that the victims' homosexuality, their use of narcotics, alcohol, and candlelight to seduce the defendants, McCullough's touching of Letterese's thigh, and the fact that Delauney locked the door upon entering the apartment, support the view that the victims intended to sodomize Maiorino and Letterese forcibly. However, the evidence that McCullough and Delauney were homosexuals simply is not sufficient to support a reasonable inference that they intended to sodomize Maiorino and Letterese forcibly. Moreover, while the use of narcotics, alcohol, and candlelight might have indicated McCullough and Delauney's desire to seduce Maiorino and Letterese, it certainly does not support a reasonable inference that they intended to sodomize them forcibly. Delauney's fastening of several locks upon entering the apartment might reasonably be interpreted as a precaution against urban crime, but at least was the most

meagre evidence of an intention to assault Maiorino and Letterese sexually absent other overt acts by the victims.

In fact, the only overt act that might support Maiorino's belief that he was about to be forcibly sodomized—McCullough's gentle brushing of Letterese's left thigh—simply does not rise to the level of force necessary to support a sodomy-justification instruction, particularly given the absence of other circumstances foreshadowing forcible sexual assault by Delauney and McCullough. Trial Transcript ("T.") 1931–33, 2178–80. *See, e.g., People v. Coleman,* 122 A.D.2d 568, 569, 504 N.Y.S.2d 949, 950 (4th Dep't 1986) (evidence that victim made homosexual proposition while displaying a butcher knife required sodomy-justification charge); *People v. Rodriquez,* 81 A.D.2d 513, 514, 437 N.Y.S.2d 346, 348 (1st Dep't 1981) (defendant's claim that victim "came out nude and grabbed her" warranted forcible rape-justification instruction). Accordingly, it was appropriate for Justice Torres to charge only that Maiorino's conduct might be justified by a reasonable fear that the victims intended to use deadly physical force and to refuse to give the jury a separate sodomy-justification instruction.

## II. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Maiorino also argues that he was denied effective assistance of counsel on appeal because appellate counsel overlooked certain legal issues that would have warranted the reversal of his conviction. First, Maiorino contends that his appellate counsel was ineffective because he failed to argue that Maiorino could not properly have been convicted of murder after the jury found that Letterese had caused Delauney's death. Maiorino argues that this violated his due process rights by removing from jury consideration the element of causation of death. Maiorino also contends that counsel was ineffective because he failed to argue that Justice Torres improperly restricted comment on McCullough's civil suit against Maiorino and Letterese.

Every criminal defendant is entitled to effective assistance of counsel on his first appeal as of right. *Evitts v. Lucey,* 469 U.S. 387, 397, 105 S.Ct. 830, 836, 83 L.Ed.2d 821 (1985). However, to constitute grounds for habeas corpus relief on account of ineffectiveness of counsel a petitioner must overcome the presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984) (Sixth Amendment requires that effectiveness of counsel be judged according to a standard of reasonableness under the circumstances). The mere fact that an attorney has failed to raise an issue does not rebut this presumption. Appellate counsel is not required to raise every issue requested by a defendant, provided counsel professionally evaluates the defendant's case and makes a tactical decision in good faith not to pursue the issue. *Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 3312, 77 L.Ed.2d 987 (1983). Moreover, counsel may omit colorable claims in order to avoid diluting or burying good arguments. *Id.* at 753, 103 S.Ct. at 3313. Only if counsel omits a claim which would reasonably have affected the outcome of an appeal in the defendant's favor may relief be granted. *See, e.g., People v. De La Hoz,* 131 A.D.2d 154, 158, 520 N.Y. S.2d 386, 388 (1st Dep't 1987) (defendant must show a "greater likelihood" that the decision would have been different had the omitted issue been raised).

### A. Failure to Raise the Issue of Causation

In the present case, there is no "greater likelihood" that the judgment would have been reversed or modified had counsel argued that Maiorino could not be convicted of murder because the jury already found that Letterese caused Delauney's death. Given the trial judge's repeated instructions and the extensive medical evidence presented by the prosecution, the jury could reasonably have found that Maiorino did in fact cause Delauney's death. Moreover, there is no legal impossibility in a jury verdict which finds accomplices guilty of different degrees of homicide, provided

each one had a different degree of culpability.

### i. Causation

■ Maiorino's contention that the jury convicted him of second degree murder without finding that he caused Delauney's death is unpersuasive in light of the trial judge's repeated instructions regarding causation.[1] In his charge, Justice Torres carefully reminded the jury of the two requirements for accomplice liability, the theory advanced by the prosecution:

> In order to find a person criminally liable for the conduct of another, you must find in addition to the mental culpability, that is the intent and knowledge with which he acted, that he aided, assisted, participated, solicited, requested, commanded, or importuned another person to engage in conduct which constitutes an offense. T. 2144.

He repeatedly charged that separate verdicts were required for each defendant. T. 2123, 2145, 2153, 2156–57, 2160–61, 2166, 2167, 2174–75, 2205. Moreover, Justice Torres emphasized that, in order to convict Maiorino or Letterese of either murder or manslaughter, the jury must find that the defendant in question caused Delauney's death. T. 2152–53, 2155–56, 2158, 2160. In no way did the trial judge's charge amount to a "mandatory presumption" that Maiorino had caused Delauney's death, thereby removing from jury consideration the element of causation. Justice Torres clearly instructed the jury that it must arrive at separate verdicts for each defendant and that it must find that the prosecution has proved beyond a reasonable doubt the requisite degree of mental culpability and causation as to each defendant.

■ Maiorino's contention that the jury convicted him of second degree murder without finding that he caused Delauney's death is also unpersuasive in light of the extensive evidence regarding the effect of Maiorino's stabbing. Maiorino relies on the chronological sequence of the injuries— first Letterese's blows to the head, then Maiorino's stabbing—to support his contention that it was legally impossible for him to have been convicted of murder after Letterese was already found guilty of manslaughter. However, the medical examiner who performed the autopsy testified that the stab wounds alone would have caused Delauney's death. T. 1355–56. The doctor further noted that it would have been unusual for Letterese's candlestick blows to Delauney's head to have caused death since there was no observable injury to the brain. T. 1343, 1355–56, 1363.

Moreover, under New York's accomplice liability theory, proof of the criminal relationship between the perpetrators is sufficient to establish guilt "notwithstanding the absence of proof as to which specific act of which individual was the immediate cause of the victim's death." *People v. Dlugash*, 41 N.Y.2d 725, 732, 395 N.Y.S.2d 419, 424, 363 N.E.2d 1155, 1159 (1977). *See also People v. Williams*, 114 A.D.2d 385, 386, 493 N.Y.S.2d 903, 904 (2d Dep't 1985) (prosecution not required to prove defendant fired fatal shot where evidence was sufficient to prove that defendant acted in concert with another). Thus, the jury in this case was not required to determine which defendant-accomplice was the immediate cause of Delauney's death. Nevertheless, the evidence supports the conclusion beyond a reasonable doubt that Maiorino did in fact cause Delauney's death by stabbing him repeatedly. Since there is no "greater likelihood" that the judgment would have been favorable to Maiorino had the issue of causation been raised, Maiorino's contention that he received ineffective assistance of appellate counsel lacks merit.

### ii. Accomplice Liability and Degree of Homicide

■ Justice Torres correctly pointed out in his jury charge that accomplices may be convicted of differing degrees of homicide depending on each one's specific intent. T. 2205–07. *See* New York Penal Law § 20.15. *See also People v. Castro*, 55 N.Y.2d 972, 973, 449 N.Y.S.2d 184, 184–85,

---

**1.** It must be assumed on appeal that the jury heeded the trial judge's instructions. *People v.* *Streiff*, 41 A.D.2d 259, 268, 342 N.Y.S.2d 543, 552–53 (4th Dep't 1973).

434 N.E.2d 253, 253–254 (1982) (in a trial involving charges of differing degrees of riot and unlawful imprisonment, court erred by instructing jury on accessory liability without indicating that degree of offense is determined by individual mental state); *People v. Monaco*, 14 N.Y.2d 43, 46–47, 248 N.Y.S.2d 41, 44, 197 N.E.2d 532, 535 (1964) (where record shows a spontaneous act of homicide by co-conspirator, the other participant is not guilty of murder without a greater showing of a "personal design" to kill).

Thus, there is no legal impossibility in a jury verdict which found Maiorino guilty of murder and Letterese guilty of manslaughter under an accomplice liability theory. The jury may reasonably have found that Maiorino acted with a specific intent to kill, while finding that Letterese intended only to cause serious physical injury. Maiorino's appellate attorney did not, therefore, render ineffective assistance of counsel by failing to raise the issue of a repugnant verdict as to causation.

### B. Failure to Raise Court's Limitation of Comment on Witness' Civil Lawsuit

■ Maiorino argues that the trial court's limitation of defense counsel's opportunity to comment during summation on witness Kevin McCullough's civil lawsuit against Letterese and Maiorino deprived him of a fair trial and that his appellate attorney's failure to raise the issue on appeal constituted ineffective assistance of counsel.

During summation, defense counsel attacked Kevin McCullough's credibility as a witness by noting that "this innocently set upon individual is suing these two kids and he stands to make some money if you convict them." T. 1991. The prosecution objected to this comment and the trial judge sustained the objection and ordered that the allusion to the lawsuit be stricken from the record. T. 1991–92. Shortly thereafter, defense counsel again alluded to the civil suit without objection, stating that "it's in the record, the record speaks for itself," (T. 1992), an apparent reference to the fact that McCullough's lawsuit was dis-

cussed at length during his cross examination. T. 808–11.

Every criminal defendant has the constitutional right to summation at the close of the evidentiary portion of trial. *Herring v. New York*, 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975). Although counsel is given wide latitude to comment on pertinent factual issues which the jury must decide, expressions of personal opinion and inflammatory or irrelevant comments regarding the veracity of witnesses are improper during summation. *People v. Butts*, 139 A.D.2d 660, 527 N.Y.S.2d 299 (2d Dep't 1988) (defense counsel's summation was improper where he characterized the state's witnesses as liars). *See also People v. Ashwal*, 39 N.Y.2d 105, 109, 383 N.Y.S.2d 204, 206, 347 N.E.2d 564, 567, (1976) (defendant deprived of fair trial because of prosecutor's suggestion during summation that defendant might be responsible for informer's death).

In order to show that appellate counsel was in fact ineffective in failing to raise the limitation of comment claim, Maiorino must demonstrate that his appellate attorney made a serious error which prejudiced his defense. *Strickland v. Washington*, 466 U.S. at 694, 104 S.Ct. at 2068. In effect, Maiorino must show that there was a "reasonable probability of a different result in the proceeding but for the errors of counsel." *Mills v. Scully*, 826 F.2d 1192, 1197 (2d Cir.1987) (defense counsel's trial strategy considered sound where there was no reasonable probability that trial result would have been different had counsel presented grand jury testimony). This is a heavy burden and Maiorino fails to overcome it.

In sustaining the prosecution's objection to defense counsel's comment during summation that "Kevin McCullough, this innocently set upon individual is suing these two kids and he stands to make some money if you convict him," (T.1991), the trial court did not prejudice Maiorino. First, McCullough's testimony about the civil suit was in evidence and the jury would have been able to infer that it might bias his testimony in the present case, even in the absence of the defense counsel's comment during summation. T. 808–11.

**338**

Second, the evidence is sufficient to support a jury finding that McCullough's testimony was indeed credible and that the defendants' version of the incident was false. The medical evidence that McCullough was stabbed at least thirteen times certainly casts doubt on Maiorino's claim of self-defense. Maiorino's testimony that he stabbed Delauney only to prevent Delauney from stabbing him is contradicted by medical evidence and Letterese's own testimony that Delauney was already too weak from his injuries to inflict deadly physical force upon Maiorino. Other factors also tend to refute Maiorino's version of the events. Robert Kelley, a patron of Uncle Charlie's South on the night of the homicide, refuted the defendants' account of their initial contact with the victims and instead corroborated McCullough's testimony that it was Maiorino and Letterese who approached the victims and suggested they accompany them to Delauney's apartment. This tends to support the prosecution's theory that the defendants intended to attack and rob McCullough and Delauney. Moreover, Maiorino and Letterese fled from Delauney's apartment after the incident, which might in fact support a reasonable belief that they were guilty of the charged crimes. Finally, Maiorino and Letterese made false statements to police officers who questioned them in the immediate vicinity of Delauney's apartment, claiming that their injuries were inflicted during a mugging in another neighborhood.

Thus, the trial court's limitation of comment on McCullough's lawsuit did not prejudice Maiorino because the jury did hear testimony on the civil suit and the court's one limitation on the issue could not reasonably overcome the evidence in favor of the jury's finding of guilt. In sum, appellate counsel did not deprive Maiorino of effective assistance of counsel in failing to submit these arguments on appeal.

Maiorino's petition for a writ of habeas corpus is denied.

It is so ordered.