**Thomas M. LYDON, Jr., Petitioner,**

v.

**Robert KUHLMAN, Supt., Sullivan Correctional Facility, Respondent.**

**No. 97 CV 1883 NG.**

United States District Court, E.D. New York.

Aug. 12, 1999.

Samuel F. Prato, Rochester, NY, for petitioner.

Susan Irene Braitman, Suffolk County District Attorney's Office, Riverhead, NY, for respondent.

## MEMORANDUM AND ORDER

GERSHON, District Judge.

In this petition for habeas corpus relief pursuant to 28 U.S.C. § 2254, petitioner challenges his October 24, 1990 conviction, after a jury trial in Suffolk County Court (Mallon, J.). Petitioner was charged with three counts of second-degree murder in the death of Lea Greene and one count of first-degree burglary. He was tried jointly, but with a separate jury, with Daniel Toal. Petitioner was convicted of second-degree murder, pursuant to N.Y. Penal Law §§ 125.25(1) (intentional murder) and 125.25(3) (felony murder), and of first-degree burglary, pursuant to N.Y. Penal Law § 140.30(2). Petitioner was sentenced to concurrent prison terms of twenty-five years to life on each of the murder convictions, and to a prison term of eight and one-third to twenty-five years on the first-degree burglary conviction, consecutive to the sentences on the murder convictions. The Appellate Division affirmed the convictions on October 18, 1993. It held that a joint trial with two juries was properly conducted, that defendant's contention that the trial court should have charged the defense of extreme emotional distress was meritless, and that the rest of defendant's contentions were also meritless. *People v. Lydon*, 197 A.D.2d 640, 603 N.Y.S.2d 771 (2d Dep't 1993). Leave to appeal to the New York Court of Appeals was denied on March 1, 1994. *People v. Lydon*, 83 N.Y.2d 855, 612 N.Y.S.2d 387, 634 N.E.2d 988 (1994) (Titone, J.).

Petitioner contends that (1) he was denied due process of law in violation of his rights under the Fifth and Fourteenth Amendments to the United States Constitution by the trial court's failure to instruct the jury that the defendant presented evidence of impaired mental capacity which affected defendant's cognitive abilities and which, if found to be true, would have been a defense to the crimes under state law; (2) he was denied due process by the trial court's "failure to individually question the trial jurors prior to their selection as to the effect of widespread adverse pre-trial publicity;" (3) that the trial court denied petitioner due process of law during the trial by failing to shield, through sequestration, the jury from a guilty verdict, reached four days before the petitioner's trial ended, returned against Daniel Toal who was standing trial in the same courtroom.

## FACTS

The prosecution presented evidence at trial that petitioner voluntarily and repeatedly confessed to murdering Lea Greene on July 18, 1989, the same day that Ms. Greene was killed. Highway Patrolman Gary Krey testified that petitioner stated that he had killed Ms. Greene. Suffolk County Detective James Hughes testified that petitioner confessed to him on that same day. Petitioner also signed a handwritten confession and made a videotaped confession, after being advised of his rights. In that confession, petitioner admitted stabbing Ms. Greene in the neck and placing his hand over her heart to count the number of heartbeats before she died. He also admitted to entering Ms. Greene's apartment with the intention of stealing goods from it. And he stated that he had taken the license plates off his car when he was parked near the robbery site so he could not be identified, and then replaced them after the murder, when he was down the road, to avoid being stopped. The prosecution also presented evidence, through Detective Hughes's testimony, that petitioner led police to where he had disposed of the murder weapon, a knife. There was also medical testimony that Ms. Greene died of a stab wound.

Patrolman Krey and Detective Hughes both testified that the defendant did not appear drunk, as did another police officer. The prosecution also presented evidence from a psychiatrist who testified that the defendant, during his videotaped confession, did not appear to be suffering from alcoholic blackout.

The defense focused on Mr. Lydon's chronic alcoholism and his alleged emotional distress at the time of the murder. Mr. Lydon's father, aunt, uncle, sister, and friends all testified to this effect. These witnesses also testified that it was difficult to tell when Mr. Lydon was drunk. The defense also presented evidence of petitioner's school record which showed that he had been classified as a student with an emotional disturbance and provided with special education. However, at age 16, various psychological tests showed him to be an average child with no major emotional problems. There was also testimony from a physician and a neuropsychologist that he suffered from alcoholic blackout, which was described as similar to amnesia, that is, a loss of memory of events that have occurred. The individual in an alcoholic blackout is not unconscious, but conscious, during the events, but does not remember them later. The neuropsychologist also testified that petitioner had an unstable personality and that his judgment would be impaired by alcohol.

Petitioner testified as to the events preceding his entry of Ms. Greene's apartment, and that he and his co-defendant stole things from her. He further said that he fell asleep there and woke up with blood on his hands and a knife with him, but said that he had no memory of murdering her or of confessing. He claimed that he was upset because his uncle had accused him of breaking into a truck, his father was ill, and he was having problems with his girlfriend. He was drunk during the entire weekend on which the crimes occurred.

### Exhaustion of State Remedies

█ The federal habeas corpus statute, 28 U.S.C. § 2254, requires that a state prisoner seeking federal habeas corpus review of a conviction first exhaust all state remedies. To fulfill the exhaustion requirement, a petitioner must have "fairly presented" a federal claim to the highest state court from which a decision can be had. *Picard v. Connor*, 404 U.S. 270, 275–76, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Daye v. Attorney General*, 696 F.2d 186, 190 n. 3 (2d Cir.1982). A petitioner must set forth in the appropriate state court all of the essential factual allegations and substantially the same legal doctrines asserted in the federal petition. *See Daye*, 696 F.2d at 191–92. Under *Daye*, a petitioner has fairly presented to the state courts the legal basis for a federal claim if he has: (1) identified the specific provision of the Constitution relied on in his habeas corpus petition; (2) cited pertinent federal cases employing constitutional analysis; (3) cited state cases employing constitutional analysis in like factual situations; (4) asserted his claim in terms so particular as to call to mind a specific right protected by the Constitution; or (5) alleged a pattern of facts well within the mainstream of constitutional litigation. *See id.* at 192–94.

█ Respondent does not dispute that petitioner made the same factual allegations he makes here in state court, but contends that petitioner did not exhaust his state remedies because he did not fairly present to the state courts the federal nature of his claims. However, petitioner did alert the state courts to his federal claims by citing federal cases in his appellate brief. *Maiorino v. Scully*, 746 F.Supp. 331 (S.D.N.Y.1990); *United States v. Napolitano*, 552 F.Supp. 465 (S.D.N.Y. 1982), and *Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). Petitioner therefore presented his federal claims to the state courts.

### The Charge Regarding Petitioner's Mental Capacity

█ The federal habeas corpus statute, 28 U.S.C. § 2254(d), limits federal habeas corpus review to situations in which a petitioner's custody (1) resulted from a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted from a decision that was

based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Mere questions of state law are not grounds for habeas corpus relief. Indeed, "it is not the province of a federal habeas court to reexamine state court determinations on state-law questions. In conducting habeas corpus review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).

Petitioner's first claim is that "Defendant was denied due process of law at his trial in violation of his constitutional rights under the Fifth and Fourteenth Amendments to the United States Constitution by the trial court's failure to instruct the jury that defendant had presented evidence of impaired mental capacity which affected defendant's cognitive abilities and if found to be true would be a defense to the crimes under state law."

■ To begin with, alcoholism and intoxication are not constitutionally mandated defenses to criminal accountability. *See Powell v. Texas*, 392 U.S. 514, 534–35, 88 S.Ct. 2145, 20 L.Ed.2d 1254 (1968). To the extent that petitioner's claim is that there was constitutional error in refusing to charge the defense of extreme emotional disturbance to the intentional murder count, the claim rests upon N.Y. Penal Law § 125.25, which states:

A person is guilty of murder in the second degree when:

1. With intent to cause the death of another person, he causes the death of such person or of a third person; except that in any prosecution under this subdivision, it is an affirmative defense that:

(A) The defendant acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be. Where this defense is established, the defendant is not exonerated; rather, the crime is reduced to first degree manslaughter, pursuant to N.Y. Penal Law § 125.20.

In rejecting this defense, the trial judge noted, among other things, that the defendant had removed the license plate from his car before the robbery/murder in order to avoid detection and remembered to replace it after he was away from the scene. After reviewing state law, the court found that petitioner's conduct did not rise to the level of extreme emotional disturbance; the Appellate Division found that the trial court had correctly followed New York law in reaching this conclusion.

The trial court did, however, agree to charge the lesser included offense of manslaughter in the second degree on the third murder count, *see* N.Y. Penal Law § 125.15(1) (reckless manslaughter), which was based on the theory of depraved indifference to human life, *see* N.Y. Penal Law § 125.25(2), and the lesser included offense of manslaughter in the first degree, *see* N.Y. Penal Law § 125.20(1), on the intentional murder count. He also charged the jury that it could consider the defendant's intoxication on the issue of intent.

The petitioner has shown no federal constitutional error in the state courts' conclusion regarding the applicability of the extreme emotional disturbance defense to the facts in this case. Indeed, the claim may well be unreviewable by this court. *Cf. Jones v. Hoffman*, 86 F.3d 46 (2d Cir. 1996) (claim of failure to charge a lesser-included offense in a non-capital case invokes a new rule under *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), and is therefore unreviewable in federal court).

■ Moreover, extreme emotional disturbance is not a defense to felony murder, N.Y. Penal Law § 125.25(3), of which petitioner was also convicted and for which he was also sentenced to twenty-five years to life.

### Questioning of Jurors About Publicity

■ Petitioner's contention that the trial judge committed constitutional error by failing to individually question jurors about their exposure to publicity is without merit. The petition appears to challenge an alleged failure of the court to question potential jurors individually regarding pretrial publicity. The record belies this claim. During jury selection, the court first asked the prospective jurors collectively about their exposure to publicity, then individually questioned prospective jurors who acknowledged awareness of pre-trial publicity, and he excused those who could not be impartial. Treating the claim as the claim argued by petitioner's counsel on direct appeal, namely, that the court failed to question the *impaneled* jurors individually about pretrial publicity when asked to do so by counsel, the claim is also without merit. The trial judge reminded the jury during the trial that they should avoid any media coverage of the case. He asked the jury as a whole before the defense summation whether or not they had been affected by anything outside of the courtroom. The jurors indicated collectively that nothing had happened to affect their ability to be fair. In the absence of any claim that a particular juror or jurors had violated the court's order to avoid exposure to publicity, there was no occasion, much less constitutional requirement, that the court question individual jurors during the trial on that subject.

### Jury Sequestration

Petitioner contends that the trial judge committed constitutional error when he refused defense counsel's request to sequester the jury. Counsel made the request after the separate jury in the joint trial reached a guilty verdict; he claimed that sequestration was necessary to shield petitioner's jury from widespread publicity about the verdict.

■ Sequestration is considered "one of the most burdensome tools of the many available to assure a fair tri-al." *United States v. Porcaro*, 648 F.2d 753, 755 (1st Cir.1981). Moreover, "the decision to sequester the jury to avoid exposure to publicity is committed to the discretion of the court, and failure to sequester the jury can rarely be grounds for reversal." *United States v. Salerno*, 868 F.2d 524, 540 (2d Cir.1989). There was no constitutional violation in denying sequestration. As noted above, there is no evidence that the jury in fact had been tainted by publicity, and the trial court judge instructed the jury to avoid reading, listening, or watching any media coverage of the case.

### CONCLUSION

For the above stated reasons, the petition for a writ of habeas corpus is hereby denied.

**SO ORDERED.**